UNITED STATES of America,
Plaintiff,

v.

Dona Manuela Fagalde **HERCE** et al.,
Defendants.

No. 71 Civ. 3226.

United States District Court,
S. D. New York.

Nov. 5, 1971.

Whitney N. Seymour, Jr., U. S. Atty., S.D.N.Y. by Taggart D. Adams, Asst. U. S. Atty., for plaintiff.

Clifton H. Stannage, Sannage & Hayton, Martin Garbus, Emil Kobrin, Klein & Garbus, New York City, for defendants.

## DECISION AND OPINION

BRIEANT, District Judge.

This is an interpleader action by the United States of America, seeking judicial determination of title to an article of personal property located within the Southern District of New York.

The property is concededly privately owned but a *bona fide* dispute exists with respect to title.

By an Order made August 2, 1971 (Tenney, J.), this Court directed that notice be published in a local newspaper once a week for a period of six consecutive weeks, and that on or before October 1, 1971, "all persons having a claim of title * * * shall file their claims thereto by filing with this Court and by serving upon the parties to this action, an answer to the complaint herein which shall set forth the basis of the claim of title."

No parties, other than those above named, have filed any such pleadings, and the time within which this may be done has expired.

The article of personal property involved in this litigation is said to be an original painting by El Greco (Domenicos Theotocopoulos), who died in 1614. It is executed on a canvas measuring 22½ inches in width by 43¼ inches in height. This work of art was delivered to the Executive Branch of the United States Government (Federal Bureau of Investigation) in 1971, voluntarily, or under circumstances not requiring the use of legal process, so that an investigation could be conducted with respect to a possible crime. The investigation resulted in no indictment, however, it did come to the attention of the Executive Branch that there were two separate sets of claimants, private individuals who asserted legal title to the painting. One set of claimants are the heirs of persons who are said to have owned the painting in Spain in 1936 at the start of the Civil War.

The other set of claimants consist of an American citizen who delivered the painting to the Federal Bureau of Investigation, and the person for whom he asserts he acted as agent.

The painting has not been publicly displayed since 1936, and its whereabouts have been unknown to those engaged in the field of fine arts.

The painting was delivered to the Federal Bureau of Investigation in an unframed condition, tacked on a piece of plywood, wrapped in a blanket and burlap. It was produced from the trunk of an automobile and handed to a Special Agent.

It is apparent to the Court and was not contested on oral argument, that litigation of the conflicting claims of title under the circumstances of this case is likely to occupy some time. This lawsuit could conceivably last two or more years. Cases trying title to works of art are not unknown in the Courts and most have taken a number of years. See, *e.g.* Menzel v. List, 24 N.Y.2d 91, 298 N.Y.S.2d 979, 246 N.E.2d 742, (a dispute over a stolen Chagall, requiring six years). The painting is likely to remain under judicial control for an extended period of time. It would be improper and unwise to deliver this unique work of art to either set of claimants until the matter has been fully litigated.

When the Federal Bureau of Investigation had completed its work in connection with the painting and no longer required it for investigative purposes, the future disposition thereof became the responsibility of Hon. Whitney North Seymour, Jr., United States Attorney for this District, representing the United States of America (Executive Branch—Department of Justice). The United States Attorney properly concluded that an interpleader action should be brought and that notice should be served on possible unknown claimants. As indicated, this has been done.

■ Plaintiff may maintain this interpleader action, and need not deposit the painting with the Court. Nor need the United States post any bond or make any deposit in Court in lieu of the chattel as is required of an ordinary plaintiff in an interpleader action who does not deposit the fund or res in Court. Title 28 U.S.C. 2408. United States v. Coumantaros, 146 F.Supp. 51 (S.D.N.Y. 1956, Sugarman, J.).

Mr. Seymour is also properly concerned about the physical condition of

the painting and the provisions to be made for custody thereof during the pendency of this litigation.

The painting was personally inspected by the Court, which also examined the location and circumstances of its present custody. The painting has been fastened with upholstery tacks and carpet tacks alternating, to a piece of scrap plywood which maintains no uniform tension on the canvas. It is exposed, unframed and open to humidity changes. The painting apparently has been rolled up incorrectly at some recent time and, as a result, has a bad scar across the right central portion and a breaking of the pigments. The lower left corner of the painting is badly disintegrated due to some kind of injury, and other portions appear, to the inexpert eye of the Court, to be threatened with flaking. The entire painting is dirty, and the usual clarity of color associated with El Greco is not apparent.

The painting is presently housed in a locked room, which room, however, is not fireproof because it is connected with the rest of the building by the usual ventilating ducts. The room is used primarily for the keeping and issuing of guns and ammunition by the Department of Justice in its regular law enforcement activities. Although a special wooden box has been made to protect the painting from injury, the box is kept in the same case with a group of submachine guns, in a room in which ammunition is present and through which a number of personnel must pass daily in order to place exhibits having to do with armament in a safe place and to draw out or return firearms and ammunition.

Although the F.B.I. personnel have shown great devotion in keeping the painting as safely as could be, and it has not suffered any discernable damage in their custody as yet, it would seem obvious from all of the foregoing facts that the present location is not a satisfactory place for an object of art of such age and value. The threat of fire, explosion or other accidental damage cannot be dismissed lightly. If any harm came to the painting it would be most embarrassing to the Government of the United States and, in fact, inexcusable.

Mr. Seymour concluded, as a matter of discretion, that the safest and best place for the painting to be lodged pending the termination of this action, would be at the Metropolitan Museum of Art in the City of New York. The Museum, the Court is informed, has offered to restore the painting without charge. Such work would otherwise involve considerable cost and expense. In addition, if the painting is lodged with the Museum for safekeeping, the Museum consents to permit the general public to view it without payment of any admission fee.

The Metropolitan Museum of Art is an educational corporation existing under Chapter 197 of the laws of the State of New York of 1870. For more than 100 years it has made available to the public, and has preserved for future generations, valuable works of art, including, but not limited to, paintings of the same sort as presently before the Court. The Museum is open to the public without charge and is world-renowned. Its expenses are subsidized in part by public funds. The curatorial staff is highly regarded for knowledge and capabilities with respect to the identification and preservation of such paintings.

We are urged that the instant motion of the United States Attorney for a Court Order authorizing transfer of the painting to the Metropolitan Museum of Art pending outcome of the lawsuit, should be granted because of the great public interest involved. Indeed, the right of the public to have such a work of art, a masterpiece which is not only a part of the national heritage of Spain but also a part of the heritage of all mankind, made available for public view is a substantial one. This argument, however, must be addressed to the Legislative Branch. The Court considers itself limited in making a disposition of this motion, to taking the course which will be fair to the parties claiming this

privately owned object of art, and which will assure its preservation at least until the outcome of the litigation.

■ The right of a court of equity to make temporary directions with respect to the preservation of a unique object of art of this type and character, pending the outcome of a lawsuit to try its title between two rival private interests cannot be questioned. The plaintiff, whose standing is analogous to a bailee, owes a duty to keep such property in safe and proper storage facilities. See Stein Hall & Co., Inc. v. Sealand Dock & Terminal Corporation, et al., 2 Misc.2d 727, 149 N.Y.S.2d 537 (Sup.Ct., N.Y.Cty.), see also Brown on Personal Property (1955) §§ 80–90 (on the rights and duties of bailors and bailees). Where, as here the article is priceless, all interested parties should have the right to have the propriety of his proposals declared in advance by the Court, so as to avoid irreparable damage.

■ Under all of the circumstances, the Court, as a matter of discretion, grants the application of the United States Attorney for authority to transfer possession of the painting to the Metropolitan Museum of Art pending the outcome of the action or the further order of this Court.

The terms and conditions of such transfer shall be set out in full in an Order to be settled on 10 days notice. Such Order shall provide that the Museum will furnish a secure place for the keeping and display of the painting to the public, under conditions and circumstances, no less restrictive than those which the Museum applies to the most valuable and irreplaceable works of art which it presently holds; that there be no charge made for any viewing of the painting; that no photograph or reproduction be made of the painting; and, that no commercial exploitation of any kind be permitted with respect thereto. On settlement of the Order, the parties may suggest any other provisions not inconsistent with the foregoing. The Museum shall file in this Court its accept-

ance of the terms of such Order, prior to delivery of the painting.

Such Order shall also provide that the painting be mounted or framed in such a manner as shall be most likely to protect it from further deterioration. There shall be no indiscriminate cleaning and restoration of this work of art. However, the curator is respectfully requested to cause the painting to be examined and to set forth, in detail, the nature and extent of such cleaning and restoration, if any, which shall be absolutely necessary, in his professional opinion, in order that the painting may be protected from any further deterioration, damage or loss during the foreseeable duration of the litigation. Additional or subsequent reports may be made, from time to time, by the curator to the Court, in writing, during the pendency of the action if he be so advised. Upon the receipt of such reports, the Court will, on notice to all parties who have appeared herein, make such orders and directions, precisely limited as to scope, as will authorize only enough cleaning and restoration as will assure the preservation of this valuable work.

Settle Order on notice as hereinbefore provided.