ZORNIAK AIR SERVICES, INC., demandante y recurrida, *v.* THE CESSNA AIRCRAFT CO., ETC., demandados y recurrente la primera.

*Número:* CE-87-705          *Resuelto:* 10 de diciembre de 1992

*Manuel Moreno Toledo*, de *Sweeting, González & Cestero*, abogado de la recurrente; *Tomás Céspedes* y *Rafael Baella-Silva*, abogados de la recurrida.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

# I

El 31 de agosto de 1983 Zorniak Air Services, Inc. (en adelante Zorniak) presentó una demanda en el Tribunal Superior, Sala de San Juan, contra Cessna, Inger Holmdin, también conocida como PIA (en adelante PIA) —haciendo negocios como Royal Aviation, Inc. (en adelante Royal)— y Fernando Márquez Dacosta (en adelante Dacosta). En la primera causa de acción, Zorniak alegó que el 17 de marzo de 1983, ésta y Cessna otorgaron un contrato de representación, mediante el cual se designó a Zorniak como representante para la venta de aviones *Citation* I, II y III en el área de Puerto Rico, Islas Vírgenes y la República Dominicana. El 17 de mayo de 1983 Cessna le notificó a Zorniak "la terminación del contrato de representación a ser efectiva 90 días a partir de la fecha de dicha comunicación". Continuó alegando que esta terminación unilateral constituyó un acto torticero al amparo de las disposiciones de la Ley de Contratos de Distribución de Puerto Rico, Ley Núm. 75 de 24 de junio de 1964, según enmendada, 10 L.P.R.A. secs. 278–278d. En el párrafo 19 de la demanda expresó, además, que como resultado de sus gestiones y esfuerzos, Cessna obtuvo una orden de compra que fue aceptada —de un avión *Citation* II— y que por tal razón Cessna le adeudaba una comisión del seis por ciento (6%) del precio de venta, cantidad que estimaba en una suma no menor de ciento setenta mil dólares ($170,000).

Reclamó entre los daños ocasionados por las actuaciones de Cessna una comisión por la venta del avión *Citation* II en exceso de ciento setenta mil dólares ($170,000).(1) Alegó,

---

(1) Reclamó, además, un millón dólares ($1,000,000) por beneficios y plusvalía al amparo de la Ley Núm. 75 de 24 de junio de 1964, según enmendada, 10 L.P.R.A. secs. 278–278d; cien mil dólares ($100,000) por pérdida de reputación comercial; veinticinco mil dólares ($25,000) por pérdidas de inversión de capital; trescientos cuarenta mil dólares ($340,000) por beneficios dejados de percibir por demoras en demostraciones, y setenta y tres mil dólares ($73,000) por beneficios dejados de percibir de otras líneas aéreas.

además, ciertas actuaciones de PIA y Dacosta que en su opinión los hacían solidariamente responsables de todos los daños reclamados, incluyendo la comisión por la venta del avión *Citation* II.

En la segunda causa de acción expresó que PIA "sin estar autorizada para ello, expidió y cobró cheques de [Zorniak] para su beneficio personal en la suma de $8,338.89. Dichos cheques los expidió a su nombre, a nombre de conocidos suyos y a nombres ficticios, falsificando la firma del presidente de la Corporación". Por estos hechos le reclamó diez mil dólares ($10,000).

El 5 de octubre de 1983 PIA y Royal contestaron la demanda negando responsabilidad.[2] El 28 de octubre Cessna contestó. Así las cosas, y luego de una serie de trámites procesales, el 9 de enero de 1986 el tribunal dictó una resolución en la cual determinó que "[e]n conformidad con el contrato suscrito entre [Cessna y Zorniak] el 17 de marzo de 1983, el mismo tendría vigencia hasta el 31 de diciembre de 1983 ...". El 26 de enero de 1987 Royal presentó una demanda contra la coparte. Le reclamó a Cessna la suma de ciento cuarenta y siete mil dólares ($147,000) en concepto de comisión por la venta del avión *Citation* II. Alegó que el 17 de agosto de 1983 Cessna y Royal[3] suscribieron un contrato de representación en los mismos términos que el previamente suscrito entre Cessna y Zorniak, y que el 6 de septiembre de ese mismo año se otorgó el contrato de venta del avión *Citation* II. Continuó alegando que la venta del avión se produjo como resultado "de las gestiones, actuaciones y diligencias realizadas por Royal" y que por lo tanto, a ésta le correspondía el pago total de la comisión.

El 20 de febrero de 1987 Cessna contestó la demanda

---

[2] PIA reconvino en relación con la segunda causa de acción reclamando daños por alegadamente ser, lo allí expresado, falso y hecho con ánimo de difamar.

[3] PIA es la única accionista de Royal.

contra coparte. Como defensa afirmativa alegó que existía una situación de reclamaciones múltiples en su contra y que lo que procedía era que el tribunal obligase a la demandante Zorniak a litigar con la codemandada Royal la disputa sobre a quién le correspondía la comisión. Razonó que si no se llevaba a cabo este procedimiento Cessna podría estar expuesta a una doble o múltiple responsabilidad.

El 18 de marzo de 1987 Cessna presentó, al amparo de la Regla 19 de Procedimiento Civil, 32 L.P.R.A. Ap. III, una demanda para obligar a reclamantes adversos a litigar entre sí. El 8 de abril del mismo año Zorniak contestó dicha demanda. Como defensa afirmativa alegó, en síntesis, que tenía derecho a la comisión y a los intereses, además de una suma razonable en concepto de honorarios de abogado. Solicitó que se ordenase a Cessna consignar la comisión y los intereses previo a la continuación de los procedimientos. El 13 de abril Royal contestó la demanda al amparo de la Regla 19 de Procedimiento Civil, *supra.* Como defensa afirmativa reiteró su derecho a recibir la comisión y expresó, además, que "[s]i Cessna debe pagarle o no una comisión a ZORNIAK, en cuanto a Royal es 'res inter ali[a]s'; situación que deberá adjudicar el Honorable Tribunal en su día". Finalmente solicitó que se declarase sin lugar la demanda contra coparte presentada por Cessna y que se continuasen los procedimientos como hasta el presente.

Así las cosas, el 21 de abril de 1987 el foro de instancia dictó la siguiente resolución:

> Estando ya todas las partes en el pleito, existiendo la posibilidad de imposición de honorarios e intereses[,] lo que haría una orden para consignar difícil de precisar en su cantidad y trabada ya una controversia entre Cessna y Zorniak sobre el derecho de esta última a devengar la comisión, el Tribunal considera que no debe autorizar la litigación en consonancia con la Regla 19 de Procedimiento Civil.

De esta resolución Cessna recurre ante nos planteando la comisión del siguiente error: "erró manifiestamente [el foro de instancia] en su interpretación de la Regla 19 de Procedimiento Civil y, por consiguiente, incurrió en un claro abuso de discreción en su resolución recurrida d[e] 21 de abril de 1987".

Decidimos revisar y expedimos el auto de *certiorari*.

## II

*Regla 19 — Procedimientos para obligar a reclamantes adversos a litigar entre sí ("interpleader")*

### REGLA 19. PROCEDIMIENTOS PARA OBLIGAR A RECLAMANTES ADVERSOS A LITIGAR ENTRE SI

Todas aquellas personas que tuvieren reclamaciones contra el demandante podrán ser unidas como demandadas y requerírseles para que litiguen entre sí dichas reclamaciones, cuando las mismas fueren de tal naturaleza que el demandante estaría o podría estar expuesto a una doble o múltiple responsabilidad. No será motivo para objetar a la acumulación el que las reclamaciones de los distintos reclamantes a los títulos en los cuales descansan sus reclamaciones no tengan un origen común o no sean idénticos sino adversos e independientes entre sí, o que el demandante asevere que no es responsable en todo o en parte de lo solicitado por cualquiera de los reclamantes. Un demandado que se hallare expuesto a una responsabilidad similar puede obtener el mismo remedio a través de una reclamación contra coparte o reconvención. Las disposiciones de esta regla suplementan y no limitan la acumulación de partes permitida en la Regla 17. 32 L.P.R.A. Ap. III.

El procedimiento para obligar a reclamantes adversos a litigar entre sí (*interpleader*) establecido por la Regla 19 de Procedimiento Civil, *supra*, proviene del derecho común inglés y nos llega a través de la Regla 22(1) de Procedimiento Civil federal, 28 U.S.C. App. Este mecanismo procesal es remediador en equidad, que debe verse

como un complemento a la Regla 17.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, sobre acumulación permisible. Su propósito es permitir que un demandante o demandado, que estaría o podría estar expuesto a una doble o múltiple responsabilidad, pueda obligar a todas aquellas personas que tuvieren reclamaciones en su contra a litigar entre sí dichas reclamaciones. Esta regla propicia el que en un solo pleito se litiguen todas las reclamaciones y se pueda así resolver la controversia y satisfacer la obligación. Esto a su vez impide que el demandante tenga que arriesgarse a escoger quién, entre todos los reclamantes, tiene la mejor reclamación. Si el demandante no tiene interés en la reclamación, este mecanismo puede obligar a los reclamantes a litigar la controversia entre ellos sin que él tenga que involucrarse en la litigación sobre los méritos de esta controversia. Cabe señalar que cualquier demandado que esté expuesto a una doble o múltiple responsabilidad puede utilizar el procedimiento de la Regla 19 de Procedimiento Civil, *supra*, por medio de una reconvención o demanda contra tercero. 7 *Wright, Miller and Kane, Federal Practice and Procedure* Secs. 1701, 1702, 1704, 1708 y 1709 (1986); 3A *Moore's Federal Practice* Secs. 22.01, 22.02, 22.08, 22.15 y 22.16 (1987); 21 Fed. Proc. L. Ed. Secs. 49:1–49:16 (1984).

La Regla 19 de Procedimiento Civil, *supra*, ofrece al demandante o demandado, según fuese el caso, protección contra las molestias y los gastos que produce la litigación de pleitos múltiples y la posibilidad de veredictos contradictorios. Además, correctamente utilizado, este mecanismo puede lograr la pronta resolución de la controversia entre los reclamantes adversos, economizando tiempo y gastos tanto a las partes como al sistema judicial.

Sobre el propósito y la naturaleza de los procedimientos para obligar a reclamantes adversos a litigar entre sí, el tratadista Moore nos expresa lo siguiente:

Interpleader is a procedural device which enables a person holding money or property, in the typical case conceded to belong in whole or in part to another, to join in a single suit two or more persons asserting mutually exclusive claims to the fund. The advantages of such a device are both manifest and manifold. *A many-sided dispute is settled economically and expeditiously within a single proceeding; the stakeholder is not obliged to determine at his peril which claimant has the rightful claim, and is shielded against the possible multiple liability flowing from inconsistent and adverse determinations of his liability to different claimants in separate suits.* Even in those cases where there is little threat of multiple liability, the stakeholder is freed from the vexation of multiple lawsuits and may be discharged from the proceeding so that the true dispute will be settled between the true disputants, the claimants. The claimants are benefited as well, since search for and execution upon the debtor's assets are obviated, the spoils of the contest being awarded directly out of the fund deposited with the court. (Énfasis suplido y escolios omitidos.) *Moore*, supra, Sec. 22.02[1], págs. 22-4 a 22.5.

▄▄▄ Como podrá observarse, la Regla 19 de Procedimiento Civil, *supra*, establece un mecanismo procesal en equidad, remediador y discrecional, que por su naturaleza debe ser aplicado liberalmente para lograr sus propósitos.[4]

Pasemos ahora a analizar si, en las circunstancias específicas del caso de autos, la implantación de los procedimientos para obligar a reclamantes adversos a litigar entre sí logra los propósitos que persigue la Regla 19 de Procedimiento Civil, *supra*.

## III

### *Aplicación de la Regla 19 de Procedimiento Civil*

En el presente caso no cabe duda de que tanto Zorniak como Royal reclaman de Cessna la misma comisión por la

---

[4] Cabe señalar que los procedimientos llevados a cabo al amparo de la Regla 19 de Procedimiento Civil, 32 L.P.R.A. Ap. III, no requieren que el demandante o demandado, según sea el caso, consigne la suma que es objeto de la controversia.

venta del mismo avión. No cabe duda que, para la mayor eficiencia y economía procesal, todas las controversias dimanantes de las relaciones contractuales entre Cessna y Royal, y entre Cessna y Zorniak, especialmente las relacionadas con la venta del avión *Citation* II, deben dilucidarse en un solo juicio ante el mismo juez. Esto no significa, sin embargo, que por este solo hecho proceda la utilización de los procedimientos establecidos en la Regla 19 de Procedimiento Civil, *supra.* Veamos.

Mediante las distintas alegaciones de las partes —la demanda, la reconvención y la demanda contra coparte— el tribunal a quo tiene ya ante sí, para su resolución, todas las controversias relacionadas con la reclamación de la comisión por la venta del avión *Citation* II. En su demanda, Zorniak no sólo le reclama la comisión por la venta del avión a Cessna, sino que también alega que Royal le es responsable solidariamente con Cessna por el pago de dicha comisión. Fundamenta esta alegación en una reclamación por daños por alegadas actuaciones torticeras de parte de Royal relacionadas precisamente con este mismo asunto.

Como podrá observarse, en este caso, las reclamaciones entre Zorniak, Royal y Cessna por la comisión de la venta del avión están tan entrelazadas, que la dilucidación de la controversia respecto a quién pertenece requiere que todas las partes, tanto los reclamantes adversos —Zorniak y Royal— como el demandante deudor —Cessna— participen en esta etapa de los procedimientos. No se trata, pues, de una controversia entre reclamantes adversos que no necesita la participación del deudor demandante, según estos procedimientos están dispuestos en la Regla 19 de Procedimiento Civil, *supra.* De esta manera fue que el foro de instancia enfocó el problema procesal. Denegó la solicitud de que se utilizasen los procedimientos bajo la Regla 19 de Procedimiento Civil, *supra*, y determinó que en el pleito se verían todas las controversias juntas.

■ Los jueces de primera instancia, al interpretar las reglas procesales, tienen el deber de garantizar que se logre una solución justa, rápida y económica de todo procedimiento. Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Por su parte, la Regla 38.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que "[e]l *tribunal* por razón de conveniencia, o para evitar perjuicio, o para evitar gastos innecesarios, o para facilitar la más pronta terminación del litigio, *podrá ordenar un juicio por separado de cualesquiera demandas, demandas contra coparte, reconvenciones, demandas contra tercero, o de cualesquiera cuestiones litigiosas independientes, y podrá dictar sentencia de acuerdo con lo dispuesto en la Regla 44.3*". (Énfasis suplido.) Los tribunales de instancia tienen amplia discreción en conceder o denegar un juicio por separado de cualesquiera cuestiones litigiosas independientes y, a menos que se demuestre un craso abuso de discreción, este Tribunal no intervendrá con dicha determinación. *Muñoz v. Tribl. de Distrito*, 72 D.P.R. 842, 846 (1951).

■ El propósito primordial de la Regla 38.2 de Procedimiento Civil, *supra*, es simplificar y aligerar la adjudicación en todo caso. En *Vellón v. Squibb Mfg., Inc.*, 117 D.P.R. 838, 859 (1986), expresamos que al decidir sobre la procedencia de un juicio por separado de alguna controversia que sea parte de la reclamación, el foro de instancia debe tomar en consideración factores tales como: "1) si resolver la controversia dispondría del caso o de una parte sustancial del mismo....; 2) si la prueba para resolver una controversia es independiente a la de los demás asuntos; 3) si las controversias o la prueba necesaria para adjudicar alguna de esas controversias están muy relacionadas entre sí; 4) si el procedimiento al separarse las controversias resulta más rápido o económico según la experiencia general".

■ Aunque el tribunal de instancia tiene amplia dis-

creción en ordenar un juicio por separado, sin embargo, no debe hacerlo a menos que sea realmente necesario para promover una solución más justa, rápida y económica, ya que la norma general es evitar la litigación fragmentada de las controversias en un pleito. 9 *Wright and Miller, Federal Practice and Procedure* Sec. 2388 (1986); J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1985, Vol. II, pág. 200.

Ahora bien, ordenar en las circunstancias específicas de este caso que el foro de instancia utilice los procedimientos dispuestos en la Regla 19 de Procedimiento Civil, *supra*, constituye una intervención indebida con el ejercicio de la discreción de dicho foro en el manejo del caso. No están presentes las circunstancias que justifican el uso de la Regla 19 de Procedimiento Civil, *supra*. Es de clara aplicación la norma de que "de ordinario, este Tribunal no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Lluch v. España Service Sta.*, 117 D.P.R. 729, 745 (1986).

De los hechos reseñados se desprende que la aplicación de la Regla 19 de Procedimiento Civil, *supra*, no está justificada. Ya todas las partes con intereses adversos están ante el tribunal al igual que todas las reclamaciones sobre la misma comisión. No existe posibilidad alguna de que Cessna pueda ser objeto de doble o múltiples reclamaciones en pleitos independientes, ni está expuesta a veredictos contradictorios. La reclamación sobre el derecho a recibir la comisión de la venta del avión será ventilada en un solo pleito ante un mismo juez. Es a éste a quien corresponde determinar el mejor manejo del caso y salvo un craso abuso de discreción, que no está presente en este

caso, no debemos intervenir con sus decisiones sobre este particular. La economía procesal se frustraría si obligásemos al foro de instancia a utilizar los procedimientos para obligar a reclamantes adversos a litigar entre sí cuando no está presente alguno de sus propósitos. Regla 19 de Procedimiento Civil, *supra*.

Por todo lo antes expuesto, y tomando en consideración que la revisión se da contra la determinación del foro de instancia, no contra los fundamentos —*El Vocero v. Junta de Planificación*, 121 D.P.R. 115 (1988); *Sánchez v. Eastern Air Lines, Inc.*, 114 D.P.R. 691, 695 (1983); *Collado v. E.L.A.*, 98 D.P.R. 111, 114 (1969); *Rodríguez v. Serra*, 90 D.P.R. 776, 777 (1964)— *procede dictar sentencia que confirme la resolución emitida en instancia denegando la solicitud de que se procediera a utilizar los procedimientos establecidos en la Regla 19 de Procedimiento Civil y devolver el caso al foro de instancia para que continúen los procedimientos de forma compatible con lo aquí resuelto.*

El Juez Asociado Señor Rebollo López emitió una opinión disidente, a la cual se unió el Juez Asociado Señor Negrón García.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López, a la cual se une el Juez Asociado Señor Negrón García.

El presente recurso nos permite delinear, en términos generales, el alcance y la naturaleza del procedimiento que establece la Regla 19 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, para obligar a reclamantes adversos a litigar entre sí. Al hacerlo, mantenemos en mente lo expresado en *Dávila v. Hosp. San Miguel, Inc.*, 117 D.P.R. 807, 808 sum. 3 (1986), a los efectos de que:

Al interpretar las Reglas de Procedimiento Civil hay que tener presente, como principio rector, que éstas no tienen vida propia, sólo existen para viabilizar la consecución del derecho sustantivo de las partes. Para lograr impartir justicia al resolver los reclamos de las partes, el tribunal debe hacer un balance equitativo entre los intereses en conflicto ejerciendo especial cuidado al interpretar las reglas procesales para que éstas garanticen una solución *justa, rápida y económica* de la controversia. (Énfasis suplido.)

# I

El 17 de marzo de 1983 Cessna Aircraft Company (en lo sucesivo Cessna) y Zorniak Air Services, Inc. (en adelante Zorniak) suscribieron un contrato mediante el cual se designó a Zorniak como representante autorizado de Cessna para vender aviones modelo *Citation* en Puerto Rico, la República Dominicana y las Islas Vírgenes. Según los términos del contrato, Zorniak recibiría un 6% de comisión en la venta de los aviones modelos *Citation* I y II, y un 4% de comisión en la venta de los modelos *Citation* III. Al momento de la otorgación del Contrato, la Sra. Inger M. Holmdin (en adelante Holmdin) fungía como Vicepresidente y piloto jefe de Zorniak.

Debido a unos incidentes acaecidos los días 2 y 3 de mayo de 1983 durante unas demostraciones del avión *Citation* II en Puerto Rico, el presidente de Zorniak despidió a Holmdin de la Compañía. Dichos incidentes motivaron que Cessna —quien según surge del expediente tenía especial interés en retener a Holmdin— enviara notificación escrita a Zorniak, fechada la misma el 17 de mayo de 1983, mediante la cual le informaba a éste la terminación unilateral del contrato entre las partes efectivo en noventa (90) días, esto es, el 15 de agosto de 1983.(1) No obstante la

---

(1) Indicaba, en lo pertinente, la carta:

"...due to the nature of the disagreements, we have decided not to continue our business arrangements with your company. Please consider this letter as formal

anterior notificación, durante el referido período de noventa días Zorniak continuó con sus labores de representación, para lo cual se comunicaba a menudo con Cessna, informándole de sus gestiones con posibles clientes que estaban interesados en la compra de los referidos modelos de aviones. Entre ellos, Zorniak estuvo en contacto con ciertas personas de la compañía dominicana Transporte Aéreo, S.A. Así las cosas, el 15 de agosto de 1983, Cessna envió "telex" a Zorniak indicándole que conforme el aviso del 17 de mayo, el contrato entre ellos terminaba ese día.

El 17 de agosto, esto es, dos días después de haber cancelado el contrato con Zorniak, Cessna suscribió idéntico contrato con Royal Aviation Corp. (en lo sucesivo Royal) —entidad corporativa formada por Holmdin y el Dr. Félix Sánchez— para la representación de los aviones, pactando esta vez una comisión de 5% para los modelos *Citation* I y II, y 3% para el *Citation* III. El mismo día, Cessna y Transporte Aéreo Dominicano suscribieron una orden de compra (*purchase agreement*) para un *Citation* II, sujeta la misma a una demostración del mencionado avión. Dicha demostración se llevó a cabo varias semanas más tarde, y finalmente Transporte Aéreo, S.A. adquirió el avión de Cessna.

Mientras todo ello sucedía, el día 25 de agosto Zorniak envió "telex" a Cessna indicándole que la terminación unilateral del contrato llevado a cabo por esta última no cumplía con el procedimiento acordado entre las partes para la cancelación del mismo. Indicó, además, que bajo la Ley Núm. 75 de 24 de junio de 1964, según enmendada, 10 L.P.R.A. secs. 278–278d, el contrato no podía terminarse sin justa causa, por lo cual continuaba en vigor, y por ende, la comisión del avión vendido a Transporte Aéreo le pertenecía a Zorniak.

El 31 de agosto, Zorniak inició acción judicial contra

---

notice that effective 90 days from this date, our agreement will terminate." Alegato de la recurrida Zorniak Air Services Inc., *exhibit* IV.

Cessna, Royal Aviation, Holmdin y el Sr. Fernando Márquez Dacosta, gerente de ventas de Cessna.(²) En la misma, le imputó a los referidos codemandados haber conspirado con el propósito de lograr la terminación del contrato en violación de la citada Ley Núm. 75. En adición a reclamar daños y perjuicios respecto a ello, Zorniak reclamó de Cessna la comisión relativa a la venta del avión a Transporte Aéreo, S.A., y, en lo referente a Holmdin, le imputó a ésta la falsificación de la firma del presidente de Zorniak en cheques cobrados para su beneficio personal.

La demanda radicada desencadenó la radicación, en adición a la correspondiente contestación a la misma, de reconvenciones y demandas contra coparte, acompañado todo ello de un extenso y complejo procedimiento de descubrimiento de prueba. *El 9 de enero de 1986, el Tribunal Superior, Sala de San Juan, determinó mediante resolución a esos efectos que el contrato entre Zorniak y Cessna estuvo en efecto vigente hasta el 31 de diciembre de 1983*; ello por el fundamento de que la terminación unilateral por parte de esta última fue en violación de los términos del contrato. *De dicha resolución, Cessna solicitó reconsideración, y, al ser denegada la misma, posteriormente acudió ante este Tribunal vía "certiorari". El recurso fue denegado.*

Por su parte, según surge del expediente, desde diciembre de 1983 Royal Aviation había estado reclamando *extrajudicialmente* a Cessna el pago de la comisión relativa a la venta del mencionado avión *Citation* II vendido a Transporte Aéreo, S.A.. No obstante, al conocer la determinación del tribunal de que el contrato con Zorniak estuvo en vigor hasta diciembre de 1983, Royal radicó *demanda de coparte* contra Cessna aduciendo, en lo pertinente, que al momento de la venta del avión *Citation* II, el contrato entre Cessna y Royal estaba igualmente vigente y en todo su efecto. Alegó

---

(²) Zorniak desistió de la acción contra el señor Márquez Dacosta posteriormente.

que la venta del avión se produjo como consecuencia de sus gestiones y diligencias y que no le había sido pagada la comisión por causa de la reclamación de Zorniak. Al igual que Zorniak, solicitó judicialmente el pago de la comisión adeudada.

*Fue a partir de esta segunda reclamación por la misma comisión de venta que Cessna radicó, dentro del mismo pleito, "DEMANDA PARA OBLIGAR A RECLAMANTES ADVERSOS A LITIGAR ENTRE SÍ — REGLA 19 DE PROCEDIMIENTO".* Solicitud de expedición de auto de *certiorari, exhibit* 10. Indicó Cessna en esta demanda contra Zorniak, Royal y Holmdin que, por razón de existir dos (2) reclamaciones con respecto a la misma comisión, Cessna podría estar expuesta a una doble o múltiple responsabilidad. Solicitó del tribunal que requiriera a dichos reclamantes que litigaran entre sí sus reclamaciones en torno a la referida comisión conforme lo indica la citada Regla 19 de Procedimiento Civil, para que así se determinara a quién correspondía la misma. Las partes oportunamente radicaron sus contestaciones a la demanda, oponiéndose Royal al procedimiento. Luego de conocer la posición de las partes al respecto, el tribunal a quo emitió Orden notificada el 27 de abril de 1987 en donde expresó y resolvió que:

> Estando ya todas las partes en el pleito, existiendo la posibilidad de imposición de honorarios e intereses lo que haría una orden para consignar difícil de precisar en su cantidad y trabada ya una controversia entre Cessna y Zorniak sobre el derecho de esta última a devengar la comisión, el Tribunal considera que no debe autorizar la litigación en consonancia con la Regla 19 de Procedimiento Civil. Solicitud de expedición de auto de *certiorari, exhibit* 1.

Inconforme, acudió Cessna ante este Tribunal —vía solicitud de *certiorari*— alegando que el tribunal de instancia había errado en su interpretación de la Regla 19 de Procedimiento Civil, ante, incurriendo de esa forma en un claro

abuso de discreción al negar el procedimiento de litigación entre reclamantes adversos. *Expedimos el auto solicitado.* En el día de hoy, una mayoría de los integrantes del Tribunal *confirma* la resolución recurrida. *Disentimos.*

## II

La correcta solución del asunto planteado nos obliga a manifestarnos, *aun cuando brevemente,* en forma comprensiva *en torno al origen, naturaleza, requisitos y propósitos que persigue la citada Regla 19 de Procedimiento Civil, ante.*

La referida disposición reglamentaria, sobre reclamantes adversos, dispone:

*REGLA 19. PROCEDIMIENTOS PARA OBLIGAR A RECLAMANTES ADVERSOS A LITIGAR ENTRE SI*

Todas aquellas personas que tuvieren reclamaciones contra el demandante podrán ser unidas como demandadas y requerírseles para que litiguen entre sí dichas reclamaciones, cuando las mismas fueren de tal naturaleza que el demandante estaría o podría estar expuesto a una doble o múltiple responsabilidad. No será motivo para objetar a la acumulación el que las reclamaciones de los distintos reclamantes a los títulos en los cuales descansan sus reclamaciones no tengan un origen común o no sean idénticos sino adversos e independientes entre sí, o que el demandante asevere que no es responsable en todo o en parte de lo solicitado por cualquiera de los reclamantes. *Un demandado que se hallare expuesto a una responsabilidad similar puede obtener el mismo remedio a través de una reclamación contra coparte o reconvención.* Las disposiciones de esta regla suplementan y no limitan la acumulación de partes permitida en la Regla 17. (Énfasis suplido.) 32 L.P.R.A. Ap. III.

Por su parte, la Regla 22(1) de Procedimiento Civil federal establece:

Rule 22. Interpleader.

(1) Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multi-

ple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that the plaintiff is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of crosseclaim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20. 28 U.S.C. App.

Una simple lectura de ambas disposiciones es todo lo que se necesita para poder uno percatarse del hecho de que *la transcrita Regla 19 de Procedimiento Civil*, ante, *es prácticamente una copia literal de la disposición reglamentaria federal.* Como es sabido, hemos resuelto, en reiteradas ocasiones, que en nuestra jurisdicción los precedentes provenientes de otras jurisdicciones o tradiciones jurídicas tendrán *fuerza persuasiva* cuando las instituciones a las que son aplicables provengan de tales tradiciones jurídicas. *Peña Clos v. Cartagena Ortiz*, 114 D.P.R. 576, 588 (1983); *Pueblo v. Matos*, 83 D.P.R. 335, 340 (1961). Se presume que al adoptar una regla o estatuto de otra jurisdicción el legislador lo ha hecho teniendo *el beneficio de la interpretación* dádale por los tribunales de dicha jurisdicción. *Nieves v. Jones, Jefe Interino Penitenciaría*, 72 D.P.R. 287, 290 (1951); *Padilla v. Vidal*, 71 D.P.R. 517, 521 (1950); *Legarreta v. Tesorero de P.R.*, 55 D.P.R. 22, 25 (1939); *Vázquez v. Font*, 53 D.P.R. 265 (1938). Por ello, *y en ausencia de jurisprudencia interpretativa de este Tribunal sobre la Regla 19 de Procedimiento Civil,* ante, *y el proceso de reclamaciones opuestas*,(³) examinamos los tratadistas y la jurisprudencia federal que discuten la misma.

La Regla 22(1) de Procedimiento Civil federal, ante, al

---

(³) En relación con jurisprudencia —pertinente a la cuestión planteada— anterior a la vigencia de las Reglas de Procedimiento Civil, véase *Autoridad de Acueductos v. Reyes*, 77 D.P.R. 11 (1954).

igual que la Regla 19 nuestra, es un mecanismo procesal que permite que una persona al enfrentarse a varias reclamaciones sobre una misma obligación o deuda reúna, bajo una sola acción judicial, a los diversos reclamantes para que éstos litiguen entre sí. *Corrigan Dispatch Co. v. Casa Guzmán, S.A.*, 696 F.2d 359 (5to Cir. 1983).

El objetivo que persiguen dichas reglas es que los reclamantes litiguen el hecho de a cuál de ellos, si a alguno, corresponde la suma adeudada por la parte demandante para que, entonces, se proceda al pago de la misma. Así, por ejemplo, en la jurisdicción federal el *interpleader* ha sido utilizado en ocasión de existir: un depósito bancario reclamado por más de una persona,[4] varios agentes reclamando una comisión sobre la venta de un mismo artículo,[5] reclamaciones adversas sobre los beneficios de una misma póliza de seguros,[6] o un asegurador de responsabilidad pública expuesto a reclamaciones múltiples surgidas luego de un accidente.[7] Esta enumeración no es exhaustiva pues la utilidad del procedimiento, respecto a otras posibles situaciones, es manifiesta.[8]

Bajo el manto protector de la Regla 22(1) federal, la persona sujeta a responsabilidad no está obligada a determinar a cuál de los reclamantes debe responder, y por ende, está protegido de otras posibles demandas de personas con derecho al fondo en cuestión. *United States v. Estate of Swan*, 441 F.2d 1082 (5to Cir. 1971); *John Hancock Mut. Life Ins. Co. v. Kraft*, 200 F.2d 952 (2do Cir. 1953). De igual

---

[4] *Francis I. du Pont & Co. v. Sheen*, 324 F.2d 3 (3er Cir. 1963).

[5] *American-Hawaiian Steamship Co. v. Bowring & Co.*, 150 F. Supp. 449 (S.D. N.Y. 1957).

[6] *Boston Old Colony Ins. Co. v. Balbin*, 591 F.2d 1040 (5to Cir. 1979).

[7] *Pan American Fire & Casualty Company v. Revere*, 188 F. Supp. 474 (E.D. La. 1960).

[8] Véase en general: Z. Chafee, *Modernizing Interpleader*, 30 Yale L. J. 814 (1921).

manera, se benefician los reclamantes del haber al no tener que emprender "una carrera" hacia el tribunal en reclamación de lo que se le adeuda.

Constituye, naturalmente, requisito previo a la autorización de un pleito bajo la regla de *interpleader* que en efecto existan reclamantes adversos, *Gaines v. Sunray Oil Company*, 539 F.2d 1136 (8vo Cir. 1976). El lenguaje expreso de la regla indica que las reclamaciones deberán ser de tal naturaleza que el demandante "estaría o podría estar expuesto" a una doble responsabilidad.[9] Tradicionalmente, el significado del término "reclamantes adversos" fue interpretado como aquellos que tuviesen reclamaciones mutuamente excluyentes, es decir, que la asignación del haber a uno, necesariamente disponía de la reclamación de los demás. *Texas v. Florida*, 306 U.S. 398 (1939). Desarrollos posteriores de la doctrina, sin embargo, han permitido la utilización del remedio en situaciones donde hay múltiples reclamaciones no necesariamente excluyentes entre sí, sobre un solo fondo que resulta insuficiente para el pago total de dichas reclamaciones. Véase, a modo ilustrativo, *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523 (1967).

*El remedio dictado por la Regla 22(1) federal es uno en equidad y por tanto uno de interpretación y aplicación liberal.*[10] No obstante, el juzgador debe ejercer cautela al concederlo y asegurarse que las reclamaciones adversas se den contra una misma suma o cantidad, de manera tal que el responsable de efectuar el pago se encuentre en amenaza real de desembolso doble o múltiple. Es menester se-

---

[9] La propia regla provee para el caso en que sea un demandado el que se vea en riesgo de múltiples reclamaciones como sería el caso ante nos: "puede obtener el mismo remedio a través de una reclamación contra coparte o reconvención." Regla 19 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

[10] La historia y naturaleza del *interpleader* se examina a fondo por el Prof. Chafee en Z. Chafee, *Broadening the Second Stage of Interpleader*, 56 Harv. L. Rev. 541, esc. 7 (1943); también en R.V. Rogers, *Historical Origins of Interpleader*, 51 Yale L.J. 924 (1942). Además, refiérase entre otros a: *Texas v. Florida*, 306 U.S. 398 (1939); *Bricks Unlimited, Inc. v. Agee*, 672 F.2d 1255 (5to Cir. 1982); *United Benefit Life Insurance Company v. Leech*, 326 F. Supp. 598 (E.D. Pa. 1971).

ñalar que, contrario a lo que aduce Cessna en su alegato, un tribunal *no* viene obligado a conceder el remedio una vez se ha demostrado la existencia de los requisitos que dispone la regla, *ya que su concesión es discrecional.* A esos efectos, los tratadistas y la jurisprudencia están acordes en que, siendo un remedio en equidad, las doctrinas de incuria (*laches*) y de manos limpias son de aplicación y pueden constituir, aunque raramente lo constituyen, un impedimento a que en efecto se autorice la litigación solicitada. *Matter of Bohart*, 743 F.2d 313 (5to Cir. 1984); *New York Life Ins. Co. v. Connecticut Dev. Auth.*, 700 F.2d 91 (2do Cir. 1983); *Kent v. Northern Cal. Reg. Off. of the Amer. Friends Serv. Com.*, 497 F.2d 1325 (9no Cir. 1974); *Pan American Fire & Cas. Co. v. Revere*, 188 F. Supp. 474 (E.D. La. 1960); *Holcomb v. Aetna Life Insurance Company*, 228 F.2d 75 (10mo Cir. 1955). Conforme nos ilustra Wright:[11]

> Although there is no express provision in Rule 22 ... federal courts, apparently relying on the equitable nature and historical background of interpleader, occasionally have accepted the argument that interpleader should not be allowed when it might reward inequitable or improper conduct. (Escolio omitido.) 7 *Wright Miller and Kane, Federal Practice and Procedure* Sec. 170, págs. 529–531n (1986).

Debe mantenerse presente que con el propósito de facilitar el análisis judicial en cuanto a si se reúnen los requisitos de la regla y para acelerar la determinación de los derechos de las partes, *normalmente el litigio se bifurca en dos etapas procesales*, aun cuando nada impide que se dilucide la controversia en una sola fase. En relación con ello, véanse: 3A *Moore's Federal Practice* Sec. 22.14[1] y [2] (1989); *Wright, Miller and Kane*, ante, Sec. 1714, esc. 10; J. Coyne, *Federal Rules of Civil Procedure*, N.Y., N.Y., Clark Boardman Company, 1988, pág. 261; P.H. Corboy y J.P.

---

[11] 7 *Wright, Miller and Kane, Federal Practice and Procedure* Sec. 1709, págs. 529–531 (1986).

Chapman, *Interpleader,* 1967 U. Ill. L.F. 274, 290 (1967); Nota, *The Independent Liability Rule as a Bar to Interpleader in the Federal Courts*, 65 Yale L.J. 715 (1956); Z. Chafee, *Broadening the Second Stage of Interpleader*, 56 Harv. L. Rev. 541 (1943). Véanse, además: *New York Life Ins. Co. v. Connecticut Development Authority*, ante; *American-Hawaiian Steamship Co. v. Bowring & Co.*, ante.

En la *primera etapa*, el tribunal determinará el derecho del solicitante a obtener el remedio bajo la regla, esto es, si debe o no concederse el *interpleader.* En esta etapa del litigio podrá pasarse prueba en cuanto a si se cumplen los requisitos exigidos por la regla. A esos efectos nos indica Wright:

> There is no set procedure for conducting the first stage of interpleader. ... The burden is on the party seeking interpleader to demonstrate that he is entitled to it. As is true of other preliminary hearings, the court is not limited to the papers presented by the parties but may take evidence, although this usually will be unnecessary. The decision whether interpleader is appropriate is made by the court but only after all parties have been given notice and an opportunity to be heard on the question. (Escolios omitidos.) *Wright, Miller and Kane*, ante, Sec. 1714, págs. 582–583.

Durante esta primera etapa, una vez concedido el remedio, el tribunal puede relevar de litigación posterior al promovente de la acción como también puede emitir orden prohibiendo a las partes demandar al mismo. De igual manera, resulta frecuente la práctica en los tribunales federales de ordenar la consignación o depósito de la cantidad reclamada, lográndose de esta manera no sólo proteger la suma de dinero en controversia, sino que se facilita la ejecución de la sentencia en su día. Es relevante destacar que aunque ésta sea práctica habitual bajo la Regla 22(1) federal, ni el relevo del promovente, ni la consignación de la suma en el tribunal son asuntos mandatorios sino que los mismos son totalmente discrecionales por parte del

tribunal.([12]) *Gelfgren v. Republic Nat. Life Ins. Co.*, 680 F.2d 79 (9no Cir. 1982); *United States v. Major Oil Corp.*, 583 F.2d 1152 (10mo Cir. 1978); *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155 (5to Cir. 1976). La decisión la tomará el juzgador conforme la particular situación de hechos que se le presente.

La *segunda fase procesal* bajo la Regla 22(1) federal normalmente se conduce solamente entre los reclamantes opuestos una vez se ha autorizado la litigación. El solicitante del remedio usualmente no es parte del litigio a menos que tenga también interés en el fondo disputado. *El hecho de que tenga tal interés, o niegue del todo su responsabilidad, no lo descualifica para poder obtener el remedio, según así se desprende de la propia regla.* Se procederá de ahí en adelante como cualquier litigio civil donde cada reclamante intentará establecer su mejor derecho al fondo mediante preponderancia de la evidencia. *Consolidated Underwriters of S.C. Ins. Co. v. Bradshaw*, 136 F. Supp. 395 (D.C. Ark. 1955).

*La tendencia moderna en la jurisprudencia federal se ha dirigido a flexibilizar el remedio y a permitir que toda controversia entre las partes reclamantes, o el solicitante, sean resueltas en la segunda etapa en vez de denegar el procedimiento.* A modo ilustrativo, véanse: *Libby, McNeill, And Libby v. City Nat. Bank*, 592 F.2d 504 (9no Cir. 1979); *Hebel v. Ebersole*, 543 F.2d 14 (7mo Cir. 1976); *Builders and Developers Corp. v. Manassas Iron & Steel Co.*, 208 F. Supp. 485 (D.C. Md. 1962). Véanse, en adición: Chafee, *Broadening the Second Stage of Interpleader*, ante; Nota,

---

([12]) No debe confundirse el remedio que provee la Regla 22(1) de Procedimiento Civil federal, 28 U.S.C. App., conocido por *Rule Interpleader* con el que provee el Título 28 U.S.C. sec. 1335, llamado *Statutory Interpleader.* Para que este último pueda concederse es necesario que en el tribunal se haya consignado la suma en disputa. De no haber consignación, el tribunal carecerá de jurisdicción para resolver el asunto. *In Re Sinking of M/V Ukola*, 806 F.2d 1 (1er Cir. 1986); *Gelfgren v. Republic Nat. Life Ins. Co.*, 680 F.2d 79 (9no Cir. 1982).

*The Independent Liability Rule as a Bar to Interpleader in the Federal Courts,* ante, y *Moore's,* ante, Sec. 22.11.

Ello significa que, cuando existan reclamantes adversos contra un fondo común y sea de aplicación la regla de *interpleader,* si existe además una segunda causa de acción independiente de uno de los reclamantes contra el otro o contra el reclamado, o de éste contra algún reclamante, todas las controversias podrán esclarecerse durante la segunda fase del litigio. *El propósito justiciero de la regla, la economía judicial y un simple sentido de lógica así lo dicta.*

Dentro del anterior marco conceptual, examinamos la situación fáctica del caso ante nuestra consideración. Al así hacerlo mantenemos presente la interpretación, previamente esbozada, relativa a la Regla 22(1) de Procedimiento Civil federal, ante.

### III

El peticionario Cessna, demandante bajo la citada Regla 19 de Procedimiento Civil, ante, resulta ser uno de los demandados originales de un pleito principal a quien, en específico, se le requirió el pago de una comisión de venta. Es de aplicación, en consecuencia, aquella parte de la citada Regla 19 que dispone que un demandado podrá obtener el remedio a través de una reclamación contra coparte o reconvención. *Grubbs v. General Electric Credit Corp.,* 405 U.S. 699 (1972); *Dakota Livestock Co. v. Keim,* 552 F.2d 1302 (8vo Cir. 1977).

Por otro lado, resulta evidente que Zorniak y Royal son, cuando menos, reclamantes opuestos, cumpliéndose así una de las condiciones necesarias para la litigación bajo la Regla 19. Ambas Compañías, como representantes de venta de Cessna, le exigieron a ésta en su momento el pago de una misma comisión por la venta del mismo avión. Ambas reclamaciones aducen que dicha comisión le pertenece a ese reclamante en forma exclusiva. Podemos advertir

que, en la eventualidad de que Cessna pagase la comisión a uno de los reclamantes, ello la colocaría en la riesgosa posición de tener que litigar contra el otro y, posiblemente, tener que pagarle también. *No hay duda que Cessna se encuentra ante reclamaciones adversas y la amenaza de litigación y pago múltiple que precisamente intenta remediar la citada Regla 19.*

Adoptando, sin decirlo, uno de los fundamentos expuestos por el tribunal de instancia, la mayoría del Tribunal expresa, en apoyo de su denegatoria de la solicitud de *interpleader* de Cessna:

> Como podrá observarse, en este caso, las reclamaciones entre Zorniak, Royal y Cessna por la comisión de la venta del avión están tan entrelazadas, que la dilucidación de la controversia respecto a quién pertenece requiere que todas las partes, tanto los reclamantes adversos —Zorniak y Royal— como el demandante deudor —Cessna— participen en esta etapa de los procedimientos. No se trata, pues, de una controversia entre reclamantes adversos que no necesita la participación del deudor demandante, según estos procedimientos están dispuestos en la Regla 19 de Procedimiento Civil .... Opinión mayoritaria, pág. 179.

La Mayoría *pasa por alto* que la demanda sobre reclamaciones opuestas se suscita dentro del transcurso procesal de una acción judicial que versa, *de manera principal*, sobre una reclamación de daños y perjuicios, la cual tiene su origen en la alegada violación, por parte de Cessna, de un supuesto contrato de distribución exclusivo entre ésta y Zorniak. *No* hay razón alguna para que Cessna tenga que participar, *o sea mantenida como parte*, en la dilucidación de la controversia, específica y separada, de a quién pertenece la comisión por la venta del avión, comisión que Cessna *acepta* tiene que pagar. *El obligar a Cessna a participar activamente, como parte, en la dilucidación de dicha controversia le significa a ésta el desembolso innecesario de dinero, por concepto de gastos y honorarios de abogado, que nunca podrá recobrar.*

El hecho de que Cessna sí viene obligada a defenderse de la reclamación principal de daños y perjuicios incoada por Zorniak, por supuesto incumplimiento de un contrato de distribución exclusivo, *no* debe ser impedimento para la concesión de su solicitud bajo la Regla 19 de Procedimiento Civil, ante; basta recordar que la mencionada disposición reglamentaria expresamente establece que no será razón para denegar una solicitud de esta índole que el promovente sostenga que no es responsable, en todo o en parte, de lo solicitado por cualquiera de los reclamantes.

Consideramos, por último, el segundo de los fundamentos que brindara el foro de instancia para rechazar la solicitud de Cessna —esto es, que sería difícil de cuantificar la orden de consignación en vista de que existe la posibilidad de la imposición de honorarios e intereses— *fundamento que el Tribunal no discute ni considera.*

Como se expresara en la Parte II de la presente ponencia, en un procedimiento de *interpleader,* el tribunal, a su discreción, puede o no emitir una orden de consignación; puede también exigir que se deposite una fianza o tomar las medidas necesarias para garantizar o asegurar los bienes.[13]

Indicamos, de entrada, que de entender el tribunal de instancia que procede una orden de consignación en este caso, el procedimiento para precisar el monto de la suma a consignar se reduce a aplicar los por cientos pactados entre las partes para la comisión al precio de venta del avión. Lo más conveniente en casos, como el presente, donde existen distintos por cientos de comisión pactados para los recla-

---

[13] Mediante moción al respecto o motu proprio un tribunal puede entre otras cosas, ordenar: el depósito de los bienes y despachar del pleito al demandante, *Corrigan Dispatch Co. v. Casa Guzmán, S.A.,* 696 F.2d 359 (5to Cir. 1983); que el demandante retenga los bienes sujeto a orden posterior del tribunal, *United States v. Herce,* 334 F. Supp. 111 (D.C. N.Y. 1971), o que se depositen en alguna institución donde ganen intereses si el pleito ha de prolongarse demasiado, *Commercial Union Insurance Co. of New York v. Adams,* 231 F. Supp. 860, 868 (S.D. Ind. 1964); *Prudential Insurance Company of America v. King,* 308 F. Supp. (D.C. Mo. 1969).

mantes, si ha de ordenarse la consignación, es que la misma se haga por la suma mayor reclamada. Véanse: *In re Sinking of the M/V Ukola*, 806 F.2d 1 (1er Cir. 1986); *Emmco Insurance Company v. Frankford Trust Company*, 352 F. Supp. 130 (E.D. Pa. 1972).

Ahora bien, en un pleito bajo la Regla 19, ante, al igual que en todo litigio, el tribunal tiene la facultad de imponer costas, intereses y honorarios de abogado. Las costas según se definen en la Regla 44.1(a) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, y la jurisprudencia interpretativa de la misma, son los gastos necesarios incurridos en la tramitación de un pleito. Éstas son concedidas para resarcir a la *parte victoriosa* en el litigio. *Rodríguez Cancel v. A.E.E.*, 116 D.P.R. 443, 461 (1985); *Torres Delgado v. Tribunal Superior*, 101 D.P.R. 516, 517 (1973).

Por otro lado, los intereses, de acuerdo con la Regla 44.3 de las de Procedimiento Civil, ante, son de dos (2) tipos: interés sobre la sentencia e interés por temeridad. El primero se impondrá a toda parte perdidosa por sentencia que ordene el pago de dinero, computándose sobre la cuantía de la sentencia desde que la misma se dicte hasta que se satisfaga incluyendo costas y honorarios de abogado. Por el contrario, el interés por temeridad se impondrá únicamente cuando la parte haya procedido temerariamente, calculándose éste según las directrices de la regla. En el presente caso, el cálculo de los intereses a pagar sobre la sentencia que en su día recaiga no supone gran dificultad ni impedimento que justifique la denegación del remedio sobre reclamaciones adversas. El mismo se determinará, al dictarse sentencia, tomando como base el interés fijado por la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras.

Bajo la Regla 22(1) federal, ante, la *norma general* en cuanto a costas y honorarios de abogado es que discrecionalmente el tribunal podrá concederlas al promovente del remedio de reclamaciones opuestas, *tomando dichas su-*

*mas del fondo disputado.* La justificación para ello recae en que el promovente ha propiciado mediante la radicación de su acción, la solución a varios posibles litigios evitando así que se malgasten los recursos económicos de los reclamantes y el valioso tiempo del tribunal. La anterior norma ha sido objeto de múltiples excepciones, denegándose el reembolso al promovido entre otras razones: por no haber sido éste diligente en iniciar el procedimiento, haber sido el causante de la situación de reclamaciones múltiples o haber obrado con mala fe. Véase, en general, *Moore's,* ante, Sec. 22.16[2].

Es preciso señalar de inmediato que la anterior norma respecto a la imposición de honorarios *no es susceptible de aplicación o adopción en Puerto Rico.* Mientras en la jurisdicción federal es completamente cónsono otorgar simultáneamente a la parte promovente del *interpleader* los honorarios *como compensación* de los gastos por él incurridos, en Puerto Rico ello supondría una grave contradicción. Como indicáramos en *Corpak, Art Printing v. Ramallo Brothers,* 125 D.P.R. 724 (1990), la diferencia fundamental entre los honorarios concedidos en la jurisdicción federal y los de Puerto Rico estriba en que en la esfera federal el objetivo que se persigue al concederlos es compensar a la parte victoriosa por los honorarios en que incurrió, mientras que el objetivo de la Regla 44.1(d) nuestra es el de penalizar o sancionar a las partes por su temeridad, obstinación y actitud frívola. Los honorarios se imponen *como sanción* a la parte perdidosa pero solamente cuando ésta haya litigado temerariamente; esto es, haya causado gastos, trabajo y molestias a la otra parte en un pleito que pudo haber evitado o que prolongó innecesariamente. *Fernández v. San Juan Cement Co., Inc.,* 118 D.P.R. 713, 718 (1987). Se exceptúa de la imposición de honorarios aquella parte perdidosa que de buena fe litigue una cuestión nueva en derecho o que no haya sido resuelta. *López de Victoria v. Rodríguez,* 113 D.P.R. 265, 272 (1982); *Marina Ind., Inc. v. Brown Bo-*

*veri Corp.*, 114 D.P.R. 64 (1983). Teniendo objetivos incompatibles con los nuestros en cuanto a la imposición de honorarios de abogado, es imposible adoptar automáticamente la norma general federal en este aspecto.

Ahora bien, el que nos neguemos a aceptar la norma anteriormente señalada no significa que resulta improcedente la imposición de honorarios en una acción bajo la Regla 19. Lo que significa es que el tribunal, al igual que en un pleito ordinario, habrá de hacer una determinación en cuanto a su procedencia jurídica conforme lo ordenado por la Regla 44.1(d) de Procedimiento Civil, ante, y la jurisprudencia interpretativa de la misma.

## IV

Conforme a lo anteriormente señalado, *no* debió denegarse el procedimiento de reclamaciones opuestas ni por razón de existir posibilidad de imposición de honorarios e intereses sobre una cantidad no determinada a consignar, ni tampoco por existir ya un pleito anterior entre dos de las partes. Tampoco procedía denegarlo por existir una reclamación independiente entre los reclamantes Zorniak y Royal. Por el contrario, bajo la situación de hechos del presente caso el remedio provisto por la Regla 19 de las de Procedimiento Civil, ante, era el más adecuado y justo. Es por ello que disentimos.