# 2004 DTA 130

## TRIBUNAL DE CIRCUITO DE APELACIONES
## REGION JUDICIAL DE SAN JUAN, PANEL II

FEDERATED DEPARTMENT STORES, INC.
Apelante

v.

MIRAMAR CONSTRUCTION CO., INC.; AMERICAN INTERNATIONAL INSURANCE COMPANY OF PUERTO RICO; PHARMATEC, INC.; YOLANDA COTTO GONZÁLEZ; AMERICAN AGENCIES, CO., INC.; STANDARD REFRIGERATION; STEEL SERVIVCES; EQUIPOS Y CONSTRUCTORA R.V.D., INC.; GLASSTRA ALUMINUM, INC.; JUNCO STEEL; LA CASA DE LOS TORNILLOS, INC.; ATLAS ROOFING; JDH CONSTRUCTION, S.E.; HILL CONSTRUCTION CORP.; AUTORIDAD DE ENERGIA ELECTRICA; PUERTO RICO WIRE PRODUCTS; PAPO CUERDA TRUCKING; CAGUAS COMERCIAL CO., INC.; LORD ELECTRIC COMPANY OF PUERTO RICO, INC.; CARIBBEAN STEEL PRODUCTS, INC.; FOUR SEASONS SUN ROOMS; GENERAL GASES; HALCO SALES; MATERIALISTAS A, B, C, Apelados

Núm. KLAN-04-00451

San Juan, Puerto Rico, a 11 de agosto de 2004

Panel integrado por su Presidenta, la Juez Bajandas Vélez,
la Juez Pabón Charneco y el Juez Carlos Rivera Martínez

Pabón Charneco, Jueza Ponente

493

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos, mediante recurso de apelación, Federated Department Stores, Inc., en adelante, Federated, solicitando la revisión de una Sentencia Parcial emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante dicho dictamen, el tribunal *a quo*, entre otros extremos, declaró Ha Lugar la causa de acción interpuesta para obligar a partes adversas a litigar entre sí.

Por las razones que expresamos a continuación, se confirma la Sentencia Parcial apelada.

### I

Conforme surge de los autos ante nos, el 4 de enero de 1999, Federated y Miramar Construction Co., Inc., en adelante, Miramar, suscribieron un contrato para llevar a cabo la construcción de la tienda por departamentos *"Macy's East"* en el centro comercial Plaza Las Américas, por la suma de $11,170,833.00. ■

A fin de asegurar el pago y cumplimiento del contrato, Miramar obtuvo las correspondientes fianzas (*"Payment & Performance Bond"*) de parte de la aseguradora American International Insurance Co., en adelante, AIICO. Entre otros aspectos, las fianzas garantizaban el pago a suplidores y subcontratistas de la obra, en adelante, los materialistas. ■

Durante el curso de la obra, y ante el alegado incumplimiento de Miramar, los materialistas reclamaron a Federated, como dueño de la obra, el pago de sus acreencias.

Ante esta situación, el 18 de septiembre de 2001, Federated interpuso la demanda de autos, predicada en la Regla 19 de las de Procedimiento Civil o *"Interpleader"*. Conforme a este procedimiento, Federated incluyó como demandados a Miramar, a AIICO y a veintiún (21) materialistas, con el propósito de que se les ordenara litigar sus derechos a recibir de Federated lo que éste le adeudara a Miramar. Tal petición se fundamentó en las disposiciones del Art. 1489 del Código Civil de Puerto Rico, el cual le impone responsabilidad al dueño de la obra frente a los materialistas, hasta el monto de lo adeudado al contratista al momento de la reclamación. ■

Cónsono con lo anterior, Federated alegó que, al momento de la reclamación, le adeudaba a Miramar la cantidad de $1,318,415.52, ■ la cual consignó en el tribunal y expresamente solicitó que:

*"...en ánimo de descargar sus obligaciones legales y bajo el Artículo 1489, supra, el Dueño de la Obra (*"Federated"*) procede a consignar la suma total del retenido de $1,318,415.52 a los fines de que, una vez las partes hayan litigado entre sí y/o lleguen a un acuerdo y/o se adjudiquen los méritos de sus respectivas reclamaciones, se proceda al pago de las cuantías correspondientes y quede Federated liberada de toda responsabilidad para con la totalidad de los demandados."* (Énfasis y subrayado nuestro).

Véase, pág. 82 de la Apelación.

Durante el transcurso del pleito, Miramar, AIICO y los materialistas comenzaron el proceso de aclarar y finiquitar las reclamaciones instadas. Como consecuencia de dichas negociaciones, Miramar y AIICO lograron transigir las deudas de diecinueve (19) de los veintiún (21) materialistas. ■ De los dos (2) restantes, uno incompareció, y la deuda del otro acreedor estaba pendiente de adjudicación ante otra sala del Tribunal de Primera Instancia. En su consecuencia, ninguna de las reclamaciones de este caso requirió litigación ante el foro judicial.

Transcurridos tres (3) meses desde que se interpuso la Demanda, Federated desistió de su acción contra cinco (5) de los materialistas, ■ ya que éstos reconocieron que no se les adeudaba. ■

El 15 de febrero de 2002, Federated, en vista de la incomparecencia de Miramar y de doce (12) de los materialistas, solicitó al tribunal *a quo* que les anotara la rebeldía. █

El 21 de marzo de 2002, Miramar se opuso a tal solicitud e indicó que de la totalidad de los materialistas, ya había pagado a diez (10) de éstos y que estaba en proceso de finiquitar la deuda de los restantes acreedores. Subsiguientemente, Miramar y AIICO pagaron las deudas de seis (6) materialistas adicionales.

Es necesario apuntar que para dichas transacciones, los materialistas suscribieron ante notario público sendos relevos, los cuales transigían totalmente de las reclamaciones que tuvieran contra Federated y Miramar. Además, se especificaba que, entre otros proyectos, el relevo estaba relacionado con el proyecto de *"Macy's"*. Véase, págs. 260-262 y 378-440 de la Apelación.

Así las cosas, el 6 de septiembre de 2002, AIICO, como cesionaria de Miramar, presentó escrito intitulado *"Moción para Solicitar Distribución de Fondos y Solicitud de Sentencia Parcial"*. En el mismo expuso lo siguiente:

*"1. Que a esa fecha, Miramar y AIICO habían satisfecho las acreencias de catorce (14) materialistas por un total de $641,364.78 dólares, quedando así siete (7) reclamantes.*

*2. Que existía controversia en cuanto a las cantidades reclamadas por los codemandados Pharmatek ($121,073.42) y Puerto Rico Wire ($70,072.55). Por ello, solicitó que del dinero consignado, se retuvieran dichas cantidades (las cuales ascienden a $191,145.97) hasta tanto se resolvieran tales controversias. Tal solicitud dejaba pendiente cinco (5) reclamantes.*

*3. Que el codemandado Halco Sales había incomparecido luego de transcurrido más de un año de ser emplazado.*

*4. Que en cuanto a los cuatro (4) materialistas restantes, habían acordado transigir sus reclamaciones de la siguiente forma:*

*a. American Agencies* *$551,532.17*

*b. Lord Electric* *$123,500.00*

*c. Standard Refrigeration* *$ 56,348.92*

*d. General Gases* *$ 10,000.00*

 *$741,381.09*█*"*

A fines de satisfacer estos acuerdos, AIICO solicitó que del dinero consignado por Federated, se retiraran dichas cantidades y así disponer sumariamente de la Demanda de *"Interpleader"*.

A pesar de lo anterior, Federated se opuso reiteradamente a las gestiones transaccionales efectuadas entre Miramar, AIICO y los materialistas. █ Asimismo, Federated se opuso a la solicitud de desembolso del dinero consignado. Su oposición estuvo fundamentada en los siguientes argumentos:

*"1. Federated debía salvaguardar los derechos de las codemandadas que no habían comparecido y estaban en rebeldía;*

*2. debía asegurarse que esas codemandadas se le relevaran de responsabilidad;*

*3. Federated tenía la necesidad y obligación imperiosa de mantenerse activa en el pleito para asegurarse que las cantidades consignadas se repartieran equitativamente, para así quedar relevada de su obligación bajo el Art. 1489, supra;*

*4. las codemandadas debían establecer mediante declaración jurada que las cantidades que recibirían se limitaban a deudas relacionadas con la construcción del proyecto Macy´s."*

Ante ello, el 20 de noviembre de 2002, AIICO solicitó al tribunal que dicha conducta ameritaba la imposición de sanciones y honorarios de abogado por temeridad a Federated. AIICO alegó que, injustificadamente, Federated estaba impidiendo que se satisficieran los acuerdos transaccionales allegados con los reclamantes restantes, a saber, Lord Electric, Standard Refrigeration, General Gases y American Agencies. Adujo, además, que ello contravenía el propósito mismo del mecanismo del *"Interpleader"*. A esta solicitud se unió la apelada Standard Refrigeration.

El 18 de febrero de 2003, notificada el 21 de febrero de 2003, se emitió Sentencia Sumaria Parcial, mediante la cual el Tribunal de Primera Instancia declaró Con Lugar la Demanda de *"Interpleader"* y ordenó el desembolso de las cantidades según solicitadas. Además, ordenó que se desembolsara la cantidad de $385,888.46 a favor de AIICO como cesionaria de Miramar. Asimismo, se permitió que se retuvieran las cantidades en controversia en cuanto a Pharmatek y Puerto Rico Wire.

Finalmente, el tribunal apelado determinó que Federated había sido temeraria, por lo que le impuso el pago de honorarios de abogado a favor de las apeladas Standard Refigeration, Lord Electric, General Gases, Miramar y AIICO en $600.00 para cada una, más intereses sobre las sumas a desembolsarse a esas codemandadas.

Es preciso señalar que en dicha Sentencia Parcial, el tribunal *a quo* apuntó que se había anotado la rebeldía a Caribbean Steel Products, Inc., Papo Cuerda Trucking, Junco Steel, Caguas Commercial Co. Inc., La Casa de los Tornillos, Steel Services, Atlas Roofing, JDH Construction y Halco Salès. En cuanto a éste último, el tribunal concluyó que en vista de su incomparecencia, se entendía que había renunciado a cualquier derecho sobre los fondos consignados.

El 4 de marzo de 2003, Federated interpuso una solicitud de reconsideración en cuanto a la temeridad impuesta y reiteró que se le anotara la rebeldía a Miramar y a AIICO. El 14 de marzo de 2003, AIICO contestó la demanda e instó reconvención como cesionaria de Miramar.

El 31 de marzo de 2003, Miramar y AIICO transigieron con Puerto Rico Wire la deuda por $8,340.41. Siendo esto así, el único acreedor cuya deuda estaba en controversia era Pharmatek.

Luego de múltiples incidentes procesales, el 1 de abril de 2004, se notificó Resolución y Enmienda a la Sentencia, dictada en igual fecha, en la que el Tribunal de Primera Instancia denegó la solicitud de reconsideración parcial. En tanto, enmendó la Sentencia para aclarar las cantidades a desembolsarse y ordenar que se notificara la misma a las partes en rebeldía.

Inconforme ante esta determinación, el 29 de abril de 2004, Federated interpuso el recurso ante nos. Tras concedida una prórroga, el 7 de julio de 2004, las apeladas Miramar, AIICO, Lord Electric, American Agencies, Standard Refrigeration, General Gases y Puerto Rico Wire, presentaron conjuntamente su alegato.

Con el beneficio del recurso instado y de la comparecencia de las partes interesadas, procedemos a resolver.

## II

En su escrito, Federated señala que el Tribunal de Primera Instancia incidió al adjudicar sumariamente la acción de *"Interpleader"*; al denegar sus múltiples solicitudes para que AIICO y cinco (5) materialistas acreditasen mediante documentos fehacientes que los acuerdos suscritos entre éstos se limitan exclusivamente al proyecto de construcción objeto de la demanda, al encontrarla incursa en temeridad condenándola al pago de honorarios de abogado e intereses temerarios; y al denegar las solicitudes para anotar la rebeldía de Miramar Construction Co., Inc.

## III

A la luz del principio cardinal de nuestro ordenamiento procesal de garantizar una solución justa, rápida y económica, la Regla 19 de las de Procedimiento Civil, 32 L.P.R.A. Ap. II, R. 19, dispone un mecanismo para obligar a reclamantes adversos a litigar entre sí. De esta manera, el peticionario evita quedar expuesto a múltiples reclamaciones. Al respecto, el precepto procesal reza:

*"Todas aquellas personas que tuvieren reclamaciones contra el demandante podrán ser unidas como demandadas y requerírseles para que litiguen entre sí dichas reclamaciones, cuando las mismas fueren de tal naturaleza que el demandante estaría o podría estar expuesto a una doble o múltiple responsabilidad. No será motivo para objetar a la acumulación el que las reclamaciones de los distintos reclamantes a los títulos en los cuales descansan sus reclamaciones no tengan un origen común o no sean idénticos, sino adversos e independientes entre sí, o que el demandante asevere que no es responsable en todo o en parte de lo solicitado por cualquiera de los reclamantes. Un demandado que se hallare expuesto a una responsabilidad similar puede obtener el mismo remedio a través de una reclamación contra coparte o reconvención. Las disposiciones de esta regla suplementan y no limitan la acumulación de partes permitida en la Regla 17."*

32 L.P.R.A. Ap. III, R. 19.

En *Zorniak v. Cessna Aircraft Co.*, 132 D.P.R. 170, 177 (1992), el Tribunal Supremo de Puerto Rico tuvo la oportunidad de expresarse en cuanto a esta figura procesal, conocida también como *"Interpleader"*. Por ser el caso normativo, reproducimos *ad verbatim* lo pertinente a dicho precepto:

*"El procedimiento para obligar a reclamantes adversos a litigar entre sí (interpleader) establecido por la Regla 19 de Procedimiento Civil, supra, proviene del derecho común inglés y nos llega a través de la Regla 22 (1) de Procedimiento Civil federal, 28 U.S.C. App. Este mecanismo procesal es remediador en equidad, que debe verse como un complemento a la Regla 17.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, sobre acumulación permisible. Su propósito es permitir que un demandante o demandado, que estaría o podría estar expuesto a una doble o múltiple responsabilidad, pueda obligar a todas aquellas personas que tuvieren reclamaciones en su contra a litigar entre sí dichas reclamaciones. Esta regla propicia el que en un sólo pleito se litiguen todas las reclamaciones y se pueda así resolver la controversia y satisfacer la obligación. Esto a su vez impide que el demandante tenga que arriesgarse a escoger quién, entre todos los reclamantes, tiene la mejor reclamación. Si el demandante no tiene interés en la reclamación, este mecanismo puede obligar a los reclamantes a litigar la controversia entre ellos sin que él tenga que involucrarse en la litigación sobre los méritos de esta controversia. Cabe señalar que cualquier demandado que esté expuesto a una doble o múltiple responsabilidad puede utilizar el procedimiento de la Regla 19 de Procedimiento Civil, supra, por medio de una reconvención o demanda contra tercero. 7 Wright, Miller and Kane, Federal Practice and Procedure Secs. 1701, 1702, 1704, 1708 y 1709 (1986); 3A Moore's Federal Practice Secs. 22.01, 22.02, 22.08, 22.15 y 22.16 (1987); 21 Fed. Proc. L. Ed. Secs. 49:1-49:16 (1984).*

*La Regla 19 de Procedimiento Civil, supra, ofrece al demandante o demandado, según fuese el caso, protección contra las molestias y los gastos que produce la litigación de pleitos múltiples y la posibilidad de veredictos contradictorios. Además, correctamente utilizado, este mecanismo puede lograr la pronta resolución*

*de la controversia entre los reclamantes adversos, economizando tiempo y gastos tanto a las partes como al sistema judicial."* (Énfasis nuestro).

Citando al tratadista Moore, el Tribunal Supremo abunda sobre el propósito y la naturaleza de este mecanismo procesal:

*"Interpleader is a procedural device which enables a person holding money or property, in the typical case conceded to belong in whole or in part to another, to join in a single suit two or more persons asserting mutually exclusive claims to the fund. The advantages of such a device are both manifest and manifold. A many-sided dispute is settled economically and expeditiously within a single proceeding; the stakeholder is not obliged to determine at his peril which claimant has the rightful claim, and is shielded against the possible multiple liability flowing from inconsistent and adverse determinations of his liability to different claimants in separate suits. Even in those cases where there is little threat of multiple liability, the stakeholder is freed from the vexation of multiple lawsuits and may be discharged from the proceeding so that the true dispute will be settled between the true disputants, the claimants. The claimants are benefited as well, since search for and execution upon the debtor's assets are obviated, the spoils of the contest being awarded directly out of the fund deposited with the court. (Énfasis suplido y escolios omitidos.) Moore, supra, Sec. 22.02[1], págs. 22-4 a 22.5."*

*Zorniak v. Cessna Aircraft Co., supra,* a la pág. 178.

Por último, en consideración que la Regla 19 de las de Procedimiento Civil, *supra,* establece un mecanismo procesal en equidad, remediador y discrecional, el Tribunal Supremo ha indicado que, por su naturaleza, debe ser aplicado liberalmente para lograr sus propósitos.

Valga mencionar que en dicha decisión se aclara que los procedimientos de *"Interpleader"* no requieren que el demandante o demandado, según sea el caso, consigne la suma que es objeto de la controversia. Véase, *Zorniak v. Cessna Aircraft Co., supra,* a la nota al calce núm. 4.

Por otra parte, la Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3, autoriza al tribunal a dictar sentencia sumaria cuando *"no existe controversia real sustancial en cuanto a ningún hecho material y... como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente".* Véase, además, *P. A.C. v. E.L.A.,* 150 D.P.R. 359 (2000); *Soto v. Rivera,* 144 D.P.R. 500 (1997); *Rodríguez v. Srio. de Hacienda,* 135 D.P.R. 219, 222 (1994); *Tello, Rivera v. Eastern Airlines,* 119 D.P.R. 83, 86 (1987); *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 D.P.R. 714, 720 (1986).

La Regla 36.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.1, provee a través de la sentencia sumaria un instrumento procesal para la resolución expedita, sin que medie vista en su fondo, de aquellos casos donde la única controversia a dirimirse por el Tribunal resida en la aplicación del derecho. Corresponde a la parte promovente acreditar al Tribunal que no existe una controversia genuina en relación con los hechos materiales en litigio y que ante la ausencia de tal controversia procede, como cuestión de derecho, que se dicte sentencia a su favor. *Soto v. Rivera, supra; Rivera et al v. Superior Pkg., Inc.,* 132 D.P.R. 115 (1992); *Tello, Rivera v. Eastern Airlines, supra; MCrillis v. Aut. Navieras de P.R.,* 123 D.P.R. 113 (1989); *Nassar Rizek v. Hernández,* 123 D.P.R. 360 (1989); *Consejo Tit. C. Parkside v. M.G.I.C. Fin. Corp.,* 128 D.P.R. 538 (1991).

Cualquier duda sobre la existencia de una controversia debe resolverse contra la parte que presenta la solicitud de sentencia sumaria. *Rivera v. Dpto. de Hacienda,* 149 D.P.R. 141 (1999). Aun cuando se determine que es pertinente dictar sentencia de forma sumaria, ello no implica que ésta tenga que favorecer a la parte promovente. *Col. Ing. Agrim. P.R. v. A.A.A.,* 131 D.P.R. 735 (1992). De la misma manera, los documentos que acompañan la moción de sentencia sumaria deben verse en la forma más favorable a la parte que se opone a la

moción, concediéndole el beneficio de toda inferencia que razonablemente se pueda derivar de ellos. De surgir una controversia real de los mismos documentos que acompañan a la moción, se debe denegar la solicitud. *Corp. Presiding Bishop of CJC of LDS. v. Purcell, supra*, a las págs. 720-721.

Por tratarse de un remedio extraordinario, la sentencia sumaria sólo debe dictarse cuando el promovente ha establecido su derecho con entera claridad y ha quedado demostrado que la otra parte no tiene derecho al remedio solicitado bajo cualquier circunstancia que resulte discernible de las alegaciones que no hayan sido refutadas por la evidencia que acompaña a la moción. El tribunal debe tener ante sí todos los hechos esenciales para dictar sentencia sumaria. *Ríos v. Cidra Mfg. Oper. of P.R.*, 145 D.P.R. 746 (1998); *PFZ Prop. Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881 (1994); *J.A.D.M. v. Centro Com.Plaza Carolina, supra.*

La parte que solicita que se dicte sentencia sumaria en un litigio está en la obligación de demostrar, fuera de toda duda, la inexistencia de controversia real sobre todo hecho pertinente que, a la luz del derecho sustantivo aplicable, determinaría una sentencia a su favor como cuestión de ley. *López Stubbe v. J. Gus Lallande*, 144 D. P.R. 774 (1998).

El propósito primordial de la sentencia sumaria es el de promover una solución justa, rápida y económica de la litigación, abreviando la disposición de pleitos que por no envolver una genuina controversia de hechos materiales, no ameritan o hacen innecesario la celebración de un juicio o vista en su fondo. El recurso de sentencia sumaria debe estar disponible para limpiar la casa de frivolidades. *Fernández and Gutiérrez v. Mun. de San Juan*, 147 D.P.R. 824 (1999); *García v. Darex, P.R., Inc.*, 148 D.P.R. 364 (1998); *ACAA v. Travelers, Inc., Co.*, 104 D.P.R. 844, 847 (1976).

El vehículo procesal de sentencia sumaria, aunque contribuye a la economía procesal al aligerar los casos, no debe aplicarse livianamente. *Pérez v. Advisors Mortgage Investors*, 130 D.P.R. 530 (1992). Presentada una moción solicitando se dicte sentencia sumaria a tenor con lo dispuesto en la Regla 36 de las de Procedimiento Civil, *supra*, si no existe controversia real de hecho, la parte promovida no puede descansar meramente en aseveraciones generales contenidas en las alegaciones, sino que, a tenor con la Regla 36.5, está obligada a demostrar que tiene prueba para substanciar sus alegaciones. Es decir, la parte promovida deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente; si se cruza de brazos corre el riesgo de que se dicte sentencia en su contra sin celebrarse un juicio en su fondo. *Pardo Santos v. Sucn. de Stella Royo*, 145 D.P.R. 816 (1998); *Rivera et al v. Superior Pkg., Inc., supra*; *Consejo Tit. C. Parkside v. M.G.I.C. Fin. Corp., supra*; *Toledo Maldonado v. Cartagena Ortiz*, 132 D.P.R. 249 (1993); *Silva v. Adm. Sistemas de Retiro*, 128 D.P.R. 256 (1991); *Corp. Presiding Bishop CJC of LDS v. Purcell, supra*; *Flores,v. Municipio de Caguas*, 114 D.P.R. 521 (1983).

Al resolver una moción para que se dicte sentencia sumaria, un tribunal no está limitado a considerar únicamente los documentos que se acompañan con la solicitud. Deben considerarse todos los documentos en autos, sean o no parte de la solicitud. Si surge que no existe controversia real de hechos, la parte opositora no podrá descansar meramente en aseveraciones generales contenidas en sus alegaciones, sino que estará obligada a demostrar que cuenta con prueba para substanciar sus alegaciones; *Flores v. Municipio de Caguas, supra*. Cuando existe una controversia *bona fide* de hechos, no procede una sentencia sumaria. Si al hacer su análisis el tribunal alberga dudas sobre la existencia de una controversia de hechos, debe negarse a dictar sentencia sumariamente. *Cuadrado v. Santiago*, 126 D.P.R. 272 (1990); *Rodríguez Meléndez v. Sup. Amigo, Inc.*, 126 D. P.R. 117 (1990).

Procede dictar sentencia sumaria cuando ha quedado claramente establecido que para resolver la controversia no hace falta una vista evidenciaria. *Gerrido García v. U.C.B.*, 143 D.P.R. 337 (1997).

De otro lado, hemos reseñado anteriormente que el Art. 1489 del Código Civil, *supra*, impone

responsabilidad al dueño de la obra ante los suplidores y obreros, hasta el monto que éste adeude al contratista al momento de la reclamación. Este artículo establece una clara excepción al principio general del derecho de obligaciones, enunciativo de que sólo tienen efecto los contratos entre los otorgantes y los causahabientes. Art. 1209 del Código Civil, 31 L.P.R.A. sec. 3374; *Goss v. Dycrex*, 141 D.P.R. 342 (1996).

Como excepción a la regla general, el citado Art. 1489 le brinda a obreros y materialistas la oportunidad de incoar una reclamación contra el dueño de la obra, aun cuando aquéllos no estuviesen vinculados con éste por relación contractual previa. *Goss v. Dycrex, supra*. Se trata de una acción directa en favor del materialista u obrero, no sujeta a las limitaciones de la acción subrogatoria que por vía del Art. 1064 del Código Civil, 31 L.P. R.A. sec. 3028, le cobijaría como acreedor. *The Comm. Ins. Co. v. Cía. de Fomento Ind.*, 123 D.P.R. 150, 159 (1989).

De acuerdo con el Art. 1489, y contrario a lo que se requiere bajo la acción subrogatoria, los obreros o suplidores que ayuden en la ejecución de una obra, quedan liberados de realizar una excusión previa en los bienes del deudor principal. Sin embargo, la acción creada por este artículo en favor de los obreros y materialistas no supone la modificación de la situación sustantiva que rige las relaciones entre el dueño de la obra y el contratista. *R. Román & Cía. v. J. Negrón Crespo, Inc.*, 109 D.P.R. 26 (1979).

Desde el momento mismo de la reclamación, el dueño de la obra se convierte en deudor de los materialistas y obreros, y deja de serlo del contratista, hasta el punto de que los acreedores particulares de éste no podrán concurrir con los obreros y materialistas en la suma debida por el dueño. *Amer. Surety Co. v. Tribunal Superior*, 97 D.P.R. 452 (1952).

El derecho que posee el obrero y materialista contra del dueño de la obra para cobrar lo que el contratista le adeuda por concepto de materiales suplidos y usados en la obra, está limitado en dos extremos:

"*a. a la cantidad que le adeude el dueño de la obra al contratista, bajo el contrato de tal construcción, cuando se hace la reclamación;*

*b. el suplidor no adquiere ante el dueño de la obra más derechos que los que tenía el contratista, de manera que la cantidad adeudada está sujeta necesariamente a liquidación por razón de reajustes o posibles reclamaciones recíprocas que surjan en relación con la obra contratada entre el contratista empresario y el dueño de la misma. Sin embargo, tales reajustes no incluyen la variación del precio del contrato de construcción por convenio privado entre el contratista y el dueño de la obra en perjuicio de los que suministran materiales.*" *Armstrong, etc. v. Inter-Amer. Builders, Inc.*, 98 D.P.R. 734, (1970); *El Toro Electric Corp. v. Zayas*, 106 D.P.R. 98, (1977).

En resumen, el citado Art. 1489 se fundamenta en un claro principio de equidad que busca desfavorecer el que un dueño o empresario, o ambos, que contrata una obra ajustada alzadamente, se enriquezca injustamente con el esfuerzo o la aportación impagada de operarios y materialistas. *C. Armstrong e Hijos v. Díaz*, 95 D.P.R. 819 (1968).

Finalmente, la Regla 44.1(d) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1(d), autoriza al Tribunal a imponer honorarios de abogado cuando una parte o su abogado hubiera procedido con temeridad.

El concepto "*temeridad*" no está expresamente definido por la Regla 44.1(d), *supra*. *Blás v. Hosp. Guadalupe*, 146 D.P.R. 267 (1998). El Tribunal Supremo de Puerto Rico ha expresado que la acción que amerita la imposición de este tipo de condena es cualquiera que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o que produzca la necesidad de que otra parte incurra en gestiones evitables. Su propósito es establecer una penalidad al litigante perdidoso que por su terquedad, obstinación, contumacia e

insistencia en una actitud desprovista de fundamento, obliga a la otra parte, innecesariamente, a asumir molestias, gastos, trabajos e inconveniencias de un pleito. *Domínguez Vargas v. Great American Life Assurance Co.*, res. del 12 de julio de 2002, **2002 J.T.S. 110**; *Jarra Const. v. Axxis Corp.*, res. el 30 de noviembre de 2001, **2001 J.T.S. 167**; *Rivera v. Tiendas Pitusa, Inc.*, 148 D.P.R. 695 (1999); *Blás v. Hosp. Guadalupe, supra*; *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713, 718-719 (1987).

La imposición de honorarios de abogado es discrecional, pero la Regla 44.1(d) de las de Procedimiento Civil es clara en el sentido de que cuando una parte ha procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado. *Raluán Corp. v. Feliciano*, 111 D.P.R. 598 (1981). Determinada la existencia de temeridad, la condena de honorarios es imperativa. *Montañez Cruz v. Metropolitan Cons. Corp.*, 87 D.P.R. 38 (1962).

No existe temeridad cuando existe una discrepancia honesta en torno al derecho aplicable o cuando se trata de una cuestión novel, no resuelta en nuestra jurisprudencia. *Soc. de Gananciales v. Royal Bank of P.R.*, 145 D.P.R. 178 (1998); *Rivera v. A & C Development Corp.*, 144 D.P.R. 450, 460 (1997). El Tribunal de Primera Instancia goza de amplia discreción en este tipo de determinaciones. *Quiñones López v. Manzano Posas*, 141 D.P.R. 139 (1996); *Miranda v. E.L.A.*, 137 D.P.R. 700 (1994); *Torres Ortiz v. E.L.A.*, 136 D.P.R. 556 (1994); *Ramírez v. Club Cala de Palmas*, 123 D.P.R. 339, 349 (1989). Finalmente, debemos resaltar que el Tribunal apelativo sólo intervendrá en este tipo de caso cuando el Tribunal de Primera Instancia hubiera abusado de su facultad. *Ramos Báez v. Bossolo López*, 143 D.P.R. 567 (1997); *Cotto Morales v. Ríos*, 140 D.P.R. 604 (1996).

De otra parte, la Regla 44.3 de las de Procedimiento Civil, 32 L.P.R.A., Ap. III, R. 44.3, establece que el tribunal ha de imponer el pago de intereses al tipo que haya fijado la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras en toda sentencia que ordene el pago de dinero, a computarse desde la fecha en que se dicte la sentencia y hasta que la misma sea satisfecha. La Regla establece en el inciso (b) una excepción al cómputo de los intereses en aquellos casos en que el tribunal concluye que la parte perdidosa ha actuado temerariamente. En dichos casos, se impondrá el pago de intereses desde que surge la causa de acción en casos de cobro de dinero o desde que se radica la acción civil en un caso de daños y perjuicios.

El Tribunal Supremo de Puerto Rico ha resuelto que cuando no se es temerario en la litigación de un caso, sólo puede imponerse el pago de intereses desde la fecha en que dicta la sentencia. *M. Quilinchini v. Villa Inv. Corp.*, 112 D.P.R. 322 (1982). Es decir, en casos donde no se ha demostrado temeridad, el único interés que puede computarse es sobre la cuantía de la sentencia, incluyendo costas y honorarios de abogados desde la fecha en que ésta se dicte. Dr. José A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, Tomo II, **Publicaciones JTS**, San Juan, 2000, págs. 745-747.

## IV

Dentro del marco jurídico y doctrinal antes expuesto, procedemos a resolver la controversia de autos.

En su escrito, Federated arguye que el tribunal *a quo* incidió al adjudicar sumariamente la acción de *"Interpleader"*, ya que Federated debía asegurarse de que los acuerdos unilaterales entre AIICO y los materialistas estaban cumpliendo con el espíritu de la Regla 19 de las de Procedimiento Civil, *supra*. Plantea, además, que en vista de que varios materialistas no habían contestado la demanda, Federated no podía determinar si existía o no controversia en cuanto al monto consignado. Es decir, que a pesar de que Federated había admitido que le adeudaba a Miramar $1,318,415.52, arguye, en esta etapa, que dicha cantidad está en controversia. En tercer lugar, señala que los apelados tenían que demostrarle, mediante documento fehaciente, que el importe de los acuerdos de transacción se limitaban exclusivamente al proyecto *"Macy's East"*.

Al analizar integralmente los propósitos de la citada Regla 19 de las de Procedimiento Civil con las obligaciones impuestas bajo el Art. 1498 del Código Civil, *supra*, debemos concluir que la posición adoptada

por Federated, indudablemente, es injustificada, arbitraria, y denota cierto desconocimiento de la finalidad del recurso que éste mismo instó.

Primeramente, en su demanda, Federated reconoció y admitió su responsabilidad, como dueño de la obra, frente a los materialistas en virtud del Art. 1498 del Codigo Civil, *supra*. De igual forma, admitió que, al amparo de tal norma, su responsabilidad no era absoluta, sino que estaba limitada al monto de lo que ésta le adeudara al contratista al momento de la reclamación.

En reconocimiento de esta obligación jurídica, Federated alegó que le adeudaba a Miramar, al momento de la reclamación de los materialistas, la cantidad de $1,318,415.52. Por tanto, no existe controversia que, de acuerdo al Derecho aplicable, Federated era responsable ante los materialistas únicamente por la cantidad de $1,318,415.52, la cual procedió a consignar. Ergo, Federated no tenía responsabilidad alguna ante los materialistas en exceso de dicha cantidad.

Tras acertadamente admitir esta responsabilidad limitada, Federated solicitó al Tribunal de Primera Instancia que la liberara y relevara de toda responsabilidad ulterior para con los materialistas del Contrato, previo a la consignación de $1,318,415.52. Véase, pág. 9 del Apéndice de la Apelación.

En consideración a esta responsabilidad y al hecho de que, según argumentado por Federated en su demanda de *"Interpleader"*, la cantidad de reclamantes, cuyas acreencias superaban lo que éste le adeudaba a Miramar, lo exponían, irremediablemente, a multiplicidad de reclamaciones. Es por ello que Federated correctamente utilizó el procedimiento de *"Interpleader"*, lo cual permitía que el tribunal le ordenara a los demandados a litigar entre sí sus reclamaciones.

A pesar de solicitar que se le relevara de responsabilidad, durante el transcurso del caso, Federated invocó lo resuelto en *Zorniak v. Cessna, supra*, e intervino en el devenir de las negociaciones, alegando que tenía dos intereses en la reclamación. Dichos intereses eran: 1) que debía asegurarse que se protegieran los intereses de los materialistas que no habían comparecido al pleito, y 2) que tenía que asegurarse que las transacciones allegadas por los apelados, las cuales se pagarían del dinero consignado, respondían exclusivamente al proyecto *"Macy's East"*. Examínenos, entonces, si los alegados intereses justificaban la intervención de Federated en la demanda de *"Interpleader"*.

En primer término, Federated alega que si los codemandados no comparecían al pleito, el monto consignado estaba en controversia. Por ende, siendo ello una controversia de hecho, no podía resolverse la Demanda sumariamente. No le asiste la razón.

A raíz de la solicitud de anotación de rebeldía a los materialistas que no habían comparecido, Miramar y AIICO hicieron constar, mediante documentación y declaraciones juradas, que ya para el 1 de mayo de 2002, habían satisfecho las reclamaciones de dichos materialistas. A tales fines, cada uno de estos materialistas, suscribió **bajo juramento** que sus deudas habían sido satisfechas y, particularmente, se aclaró el monto de la transacción allegada, la cual generalmente resultó ser menor a las cantidades reportadas por Federated en su Demanda. Los materialistas declararon, además, que relevaban de responsabilidad, no sólo a Miramar, sino también a Federated, por cualquier reclamación que tuviesen en cuanto al proyecto *"Macy's East"*. Valga recalcar que dichas transacciones se llevaron a cabo sin hacer uso del dinero consignado por Federated.

Por tanto, cuando el 1 de mayo de 2002, AIICO solicitó que se dictara sentencia sumaria, Federated pudo comprobar, mediante prueba documental, que los materialistas que habían incomparecido, no sólo se le habían satisfecho sus acreencias, sino que lo habían relevado de cualquier responsabilidad por las reclamaciones objeto de la Demanda. Asimismo, Federated pudo comprobar con certeza matemática, a cuánto se redujo el monto de la deuda, ya que en todas las transacciones se especificó la cantidad aceptada por los materialistas.

De todo lo anterior, se colige que si las acreencias de los "*rebeldes*" habían sido satisfechas, éstos no podían tener interés alguno sobre el monto consignado por Federated. Por ende, es forzoso concluir que la incomparecencia de estos materialistas en nada repercutían sobre el monto consignado, por lo que la cuantía del mismo no estaba en controversia como plantea Federated. En vista de ello, la intervención o interés de Federated fue injustificada y arbitraria.

En segundo lugar, indica Federated que tenía interés en impedir el desembolso del dinero consignado hasta asegurarse que las transacciones allegadas por los apelados, respondían exclusivamente al proyecto "*Macy´s East*".

No obstante ello, nada existe en los autos que prudentemente tienda a inferir que el dinero se utilizaría para pagar otras deudas que no fueran las relacionadas al proyecto "*Macy´s East*". ▮ Lo que se infiere de los escritos, y según concluyó el tribunal *a quo*, es que el desembolso del dinero era para disponer de las deudas reclamadas; conforme a las alegaciones de Federated. A tales fines, consideramos pertinente señalar lo siguiente:

"*1. En la Demanda, Federated alegó que Miramar adeudaba a American Agencies la cantidad de $975,212.00. El 30 de abril de 2002, Miramar, AIICO y American Agencies no sólo aclararon que la deuda era $551,532.17, sino que el materialista renunció a cualquier reclamación que tuvieran contra Federated por el proyecto "Macy´s". Véase, págs. 276-278 de la Apelación.*

*2. En la Demanda, Federated alegó que Miramar adeudaba a Lord Electric la cantidad de $187,225.00. El 1 de agosto de 2002, el materialista aclaró que la deuda era de $123,500.00. Véase, págs. 351-352 de la Apelación.*

*3. En la Demanda, Federated alegó que Miramar adeudaba a Standard Refrigeration la cantidad de $56,348.92. En el mes de agosto de 2002, Miramar, AIICO y Standard Refrigeration no sólo aclararon que la deuda era correcta, sino que renunciaron a cualquier reclamación que el materialista tuviera contra Federated por el proyecto "Macy´s". Aclararon, además, que dicho relevo no se extendía a otros proyecto no relacionado con "Macy´s". Véase, págs. 360-362 de la Apelación.*

*4. En la Demanda, Federated alegó que Miramar adeudaba a General Gases la cantidad de $10,000.00. El 17 de septiembre de 2002, Federated indica mediante "Moción Solicitando Término Adicional" que había recibido un escrito de Estipulación Transaccional suscrito entre Miramar, AIICO y General Gases, mas no lo acompañó como parte de su apéndice. Véase, págs. 441-442 de la Apelación. No obstante, surge de los autos que a consecuencia de las negociaciones entre los apelados, la deuda se mantuvo intacta.*

*5. En la Demanda, Federated alegó que Miramar adeudaba a Puerto Rico Wire la cantidad de $70,072.55. A consecuencia de las negociaciones, se aclaró que la deuda era $8,340.41.*"

Como vemos, los materialistas apelados no sólo aclararon que las transacciones se referían al proyecto "*Macy´s East*", sino que relevaron expresamente a Federated de cualquier reclamación que tuvieran sobre dicho proyecto. Por tanto, Federated no tenía justificación alguna para sostener que, a pesar de ser expresamente relevado de responsabilidad, el dinero se utilizaría para pagar otras deudas.

Sin embargo, es imperativo señalar que, a pesar de que los materialistas afectados solicitaron reiteradamente que se ordenara el desembolso de sus acreencias según transigidas, Federated se opuso tenazmente alegando que **no debían desembolsarse fondos parciales hasta que no comparecieran todos los demandados**. Véase, págs. 449-450 de la Apelación. Obsérvese que Federated no alegó que se oponía al desembolso porque el dinero fuera ha utilizarse para pagar otras deudas ajenas al caso, según ha planteado en el

En vista de lo anterior, Federated no tenía un interés legítimo en intervenir en la litigación o negociaciones entre los apelados, conforme a *Zorniak v. Cessna, supra.*

Ha quedado claramente establecido que, como cuestión de Derecho, la responsabilidad de Federated frente a los materialistas está limitada a lo que éste le adeudara a Miramar al momento de la reclamación. Como cuestión de hecho, es incontrovertible, por admisión de Federated, que le adeuda a Miramar, la cantidad consignada. Por tanto, en ausencia de un interés de Federated en participar de las negociaciones entre los apelado, procedía resolver sumariamente la responsabilidad de Federated al amparo del Art. 1489, *supra.*

Lo anterior nos lleva al señalamiento de error de Federated, el cual plantea que no debió imputársele temeridad. A la luz de los hechos antes reseñados y al Derecho aplicable, no albergamos duda de que la conducta de Federated fue temeraria.

Según antes esbozado, luego de que Federated solicitó la anotación de rebeldía a los materialistas que habían incomparecido, Miramar se opuso a ello aduciendo que la incomparecencia de los materialistas respondía al hecho de que a algunos les habían pagado sus acreencias y los restantes estaban próximos a llegar a un acuerdo transaccional. Consiguientemente, tales transacciones fueron acordadas, y así Miramar, AIICO y los materialistas apelados solicitaron el desembolso del dinero consignado para satisfacer sus acreencias.

No empece a esta explicación, desde el mes de marzo de 2002, y durante dos (2) años, Federated se opuso a que se perfeccionaran los acuerdos transaccionales. Tal oposición, fundamentada en que debía proteger los intereses de los materialistas que no habían comparecido, se dio, inclusive, por encima de los reclamos de los materialistas apelados. Como hemos corroborado, el alegado interés de protección era totalmente innecesario, ya que los materialistas que no habían comparecido, no tenían, por razón de pago, interés alguno en participar del dinero consignado.

Por otro lado, Federated se opuso al desembolso del dinero aduciendo que debía asegurarse que los materialistas lo relevaran de responsabilidad. Ya ha quedado claro que en los acuerdos transaccionales, que forman parte de los autos, así lo hicieron. Sin embargo, e injustificadamente, Federated continuó en su posición.

Asimismo señaló que debía mantenerse activa en el pleito para asegurarse que las cantidades consignadas se repartieran equitativamente. Lo anterior es incongruente a la obligación impuesta por el Art. 1489, *supra*, y la Regla 19 de las de Procedimiento Civil, *supra.*

Ha quedado reconocido que Federated era responsable ante los materialistas hasta el monto de dinero que consignó en el tribunal. No obstante, en vista de que habían varios reclamantes, Federated utilizó el procedimiento de *"Interpleader"* para que los litigantes acordaran entre sí sus reclamaciones. Para ello, y de acuerdo a la responsabilidad que tenía como dueño de la obra, era totalmente innecesaria la participación de Federated. Para evitar mayor responsabilidad, es que precisamente se utiliza este remedio procesal.

No obstante, la realidad es que los materialistas apelados lograron transigir sus reclamaciones por cantidades menores a las alegadas en la Demanda y las cuales podían satisfacerse del monto consignado. Más aún, luego de desembolsar las cantidades solicitadas, quedará un superávit en el mismo, sobre el cual, como cuestión de Derecho, Federated no tiene derecho alguno, ya que el mismo, según reconoció, es dinero adeudado a Miramar.

En consideración a lo anterior, es inescapable la conclusión de que la conducta de Federated prolongó innecesariamente el pleito, provocando así gestiones, gastos y molestias innecesarias para el resto de las partes,

y en particular para los materialistas, quienes prestaron sus servicios y de los que Federated se ha beneficiado.

Por tanto, en ausencia de abuso de discreción, confirmamos la determinación del Tribunal de Primera Instancia en su determinación de temeridad contra Federated.

Por otra parte, Federated plantea como segundo señalamiento de error que incidió el tribunal recurrido al declarar sin lugar las varias solicitudes para anotar la rebeldía de Miramar Construction Co., Inc. No detectamos abuso de discreción sobre este particular, máxime cuando es evidente que AIICO se subrogó en los derechos de Miramar Construction, Co., Inc., haciendo la comparecencia de ésta una pro forma.

## V

Por los fundamentos antes expuestos, se confirma la Sentencia recurrida.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oqueno Graulau
Secretaria General

### ESCOLIOS 2004 DTA 130

**1.** Federated alegó que el proyecto tuvo órdenes de cambio (*"Change Orders"*) que incrementaron el valor del contrato a $14,661,061.16.

**2.** Valga mencionar que, previo a la suscripción de la fianza, Miramar suscribió con AIICO un Contrato General de Indemnidad (*"General Contract of Indemnity"*). A tenor con el acápite dos (2) de la cláusula quince (15) de dicho contrato, Miramar cedió a la fiadora todos sus derechos bajo el contrato de construcción, incluyendo el derecho a cobrar cualquier balance contractual adeudado a ésta, hasta el monto de la indemnización pactado en el contrato de indemnidad. Véase, pág. 409 de la Apelación.

**3.** El Art. 1489 del Código Civil de Puerto Rico establece que: *"[l]os que ponen su trabajo y materiales en una obra ajustada alzadamente por el contratista, no tienen acción contra el dueño de ella, sino hasta la cantidad que éste adeude a aquél cuando se hace la reclamación."* 31 L.P.R.A. sec. 4130.

**4.** Es importante apuntar que Federated alegó que las deudas reclamadas por los subcontratistas y suplidores sobrepasaban la cantidad consignada por éste, por lo que planteó que Miramar y AIICO eran responsables solidariamente frente a los reclamantes por dicha diferencia. Federated alegó que la diferencia en cuestión ascendía a $777,318.11. Véase, pág. 7 de la Apelación. Además de ello, Federated incluyó una segunda causa de acción contra Miramar solicitando el pago de los gastos y honorarios de abogado, según pactados, por los trámites extrajudiciales y judiciales del caso de marras y en el caso *Pharmatek v. Miramar Construction Co., y otros*, KLCD01-0042.

**5.** De hecho, parte de las deudas fueron finiquitadas por cantidades menores a las alegadas en la Demanda.

**6.** A tales fines, el 17 de junio de 2002, se notificó Sentencia Parcial de archivo por desistimiento en cuanto a los codemandados Yolanda Cotto, Four Season Sun Rooms, Equipos y Constructora R.V.D., Autoridad de Energía Eléctrica y Hill Construction Corp.

**7.** Miramar aclaró, posteriormente, que había pagado las deudas de dichos reclamantes. Véase, Moción en Oposición a Moción de Anotación de Rebeldía y Otros Extremos, págs. 251-254 de la Apelación.

**8.** La referida solicitud fue dirigida contra los codemandados Junco Steel, Standard Refrigeration, Caribbean Steel Products, Papo Cuerda, Caguas Comercial, La Casa de los Tornillos, Steel Services, Atlas Roofing, JDH Construction, Halco Sales, Puerto Rico Wire y Pharmatek. Por otra parte, la apelada American Agencies contestó la Demanda e instó Demanda Contra Coparte en cuanto a Miramar y AIICO.

9. Nótese que la suma de las cantidades que AIICO solicitó que se retuvieran y de las que solicitó el desembolso ascienden a $934,865.61. Dicha cantidad es menor a la cantidad consignada, aun si se incluye la alegada deuda de Halco Sales por $2,338.55.

10. Véase, Oposición a Moción Sometiendo Evidencia de Pagos y Otros Extremos del 1 de mayo de 2002, págs. 279-281 de la Apelación; Oposición a Estipulación Transaccional y Solicitud de Señalamiento de Vista del 8 de mayo de 2002, págs. 282-284 de la Apelación; Moción Urgente en Oposición a Moción Informativa del 6 de agosto de 2002, págs. 353-356 de la Apelación; Oposición a Solicitudes de Desembolso de Fondos Depositados en el Tribunal del 7 de octubre de 2002, págs. 448-451 de la Apelación; Moción Solicitando Remedios del 18 de septiembre de 2003, págs. 606-608 de la Apelación; y Moción Ratificando Solicitud de Radicación de Declaraciones Juradas y Solicitud de Argumentación Oral del 14 de enero de 2004, págs. 628-634 de la Apelación.

11. De hecho, ello sería causa para impugnar la Sentencia por fraude a las partes y al tribunal.