Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **MMG PRCI CR, LLC**<br><br>Recurridos<br><br>v.<br><br>**PRIME R. CONSTRUCTION, CORP.; ROBERTO SOTO CARRERAS, ELBA FRANCISCA CHABRIER ROCHET Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS**<br><br>Peticionarios | KLCE202400261 | **CERTIORARI**<br>Procedente del Tribunal de Primera Instancia, Sala **Caguas**<br><br>Caso Núm.:<br>**ECD2005-0997 (801)**<br><br>Sobre: COBRO DE DINERO Y EJECUCION DE HIPOTECA (VÍA ORDINARIA |

Panel integrado por su presidenta la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 16 de abril de 2024.

Comparece ante nos, Roberto Soto Carreras *por derecho propio*, en adelante, Soto Carreras o peticionario, solicitando que revisemos la *"Resolución"* del Tribunal de Primera Instancia, Sala de Caguas, en adelante, TPI-Caguas, notificada el 31 de enero de 2024. En su dictamen, el TPI-Caguas denegó la solicitud del peticionario para cancelación de hipotecas.

Por los fundamentos que exponemos a continuación, *denegamos expedir el recurso solicitado.*

## I.

Los hechos que dan lugar al recurso de epígrafe se remontan al 13 de junio de 2005, cuando Westernbank de Puerto Rico incoó una demanda en cobro de dinero y ejecución de hipoteca contra Prime R. Construction Corp., en adelante, Prime, y Soto Carreras.

En la misma le solicitó al TPI-Caguas que ordenara a los peticionarios a pagar los préstamos 738001397, 7380016084 y 7380016052.[1] Además, solicitó que se ejecutara la hipoteca constituida el 13 de mayo de 2022, con la que se garantizó estos préstamos, por la suma de $400,000.00, en adelante, Hipoteca Núm. 386.[2] La mencionada hipoteca estaba garantizada con una propiedad en el Municipio de Caguas, en adelante, Finca Núm. 25,230.[3]

El 5 de septiembre de 2006 el TPI-Caguas emitió una *"Sentencia Enmendada"* en la que declaró "Con Lugar" la demanda de Westernbank.[4] Posteriormente, el Foro Recurrido emitió una *"Orden de Ejecución de Sentencia".*[5] Luego de que la Finca Núm. 25,230 fue adjudicada en subasta celebrada el 13 de marzo de 2006,[6] Prime y Soto Carreras presentaron una *"Moción Urgente de Paralización de Subasta".*[7] En su petitorio, estos arguyen que el edicto de la subasta indica que se ejecutarían tres (3) hipotecas, pero la *"Sentencia Enmendada"* ordena la ejecución de cuatro (4) hipotecas.[8] Además, alegan que en el Acta de Subasta no se indicó en donde se celebró la venta judicial.[9] El peticionario alega que antes de que el Foro Primario resolviera la solicitud del peticionario para anular la venta judicial, el recurrido presentó en el Registro de la Propiedad la escritura de cancelación de hipoteca voluntariamente.[10]

Así las cosas, el 14 de abril de 2008, el Foro Primario emitió una *"Orden de Cancelación de Gravámenes"* posteriores sobre la

---

[1] Apéndice del recurso, págs. 1-3.
[2] *Id.* pág. 5.
[3] *Id.* pág. 12.
[4] *Id.* pág. 6.
[5] *Id.* pág. 11.
[6] *Id.* pág. 15
[7] *Id.* pág. 17.
[8] *Id.* pág. 18.
[9] *Id.* págs. 17 y 37.
[10] *Id.* pág. 64.

Finca Núm. 25,230,[11] y mediante *"Resolución"* del 23 de abril de 2008, el TPI-Caguas solo anuló la venta judicial en cuestión.[12]

Luego de transcurridos varios años, el Banco Popular de Puerto Rico, en adelante, BBPR, se convirtió en el sucesor de Westernbank. El 22 de mayo de 2015, el BBPR presentó una *"Solicitud de Nueva Orden y Mandamiento"*.[13] En su solicitud, el BBPR indicó que la deuda objeto de la demanda del 2005 continuaba vigente, no obstante, a la anulación de la subasta anterior. Por ello, solicitó la ejecución de la Finca Núm. 25,230.

El 16 de julio de 2015, el Foro Primario notificó la orden que solicitó que el BBPR demostrara que la quiebra de Prime fue levantada.[14] El 17 de agosto de 2015, el TPI-Caguas ordenó a los Prime y Soto Carreras a expresarse en contra de la solicitud de BBPR.[15] El 14 de septiembre de 2015, Soto Carreras presentó su oposición, alegando que las hipotecas objetos del litigio habían sido canceladas por el acreedor.[16]

Luego de otras instancias procesales, el 22 de enero de 2016, el Foro Primario dictó una orden, determinando que la hipoteca seguía inscrita en el Registro de la Propiedad, por lo que procedía la ejecución de esta.[17]

El 1 de agosto de 2023, se notificó la venta en subasta pública de la Finca Núm. 25,230, la cual fue adjudicada a MMG PRCI CR, LLC, en adelante, MMG o recurrido.[18] Sin embargo, mediante *"Resolución"*, el TPI-Caguas anuló la subasta precitada, por entender que el edicto que la anunció fue insuficiente.[19]

---

[11] Apéndice del recurso, pág. 35.
[12] *Id.* pág. 37.
[13] Apéndice del alegato en oposición, pág. 1.
[14] *Id.* pág. 6.
[15] *Id.* pág. 7.
[16] *Id.* pág. 11.
[17] *Id.* pág. 10.
[18] Apéndice del recurso, pág. 54.
[19] *Id.* pág. 59.

Por su parte, el 23 de noviembre de 2023, Soto Carreras presentó *"Moción Solicitando Producción de Documentos Sección 2-604 (A) Ley de Transacciones Comerciales Regla 49.2"*.[20] En ella solicitaron que se cancelaran las hipotecas que aun gravaban la Finca Núm. 24,230. Sin embargo, el 9 de enero de 2024, el TPI-Caguas resolvió "No Ha Lugar" la precitada moción.[21] El 25 de enero de 2024, el peticionario le solicitó al Foro Recurrido que reconsidera,[22] pero este resolvió "No Ha Lugar".[23]

Inconforme, Soto Carreras recurre *por derecho propio* ante esta Curia mediante auto de *certiorari*. En su recurso, el peticionario hace el siguiente señalamiento de error:

> ERRÓ EL TPI, AL NO RELEVAR A LOS DEMANDADOS DE LA OBLIGACIÓN Y ORDENAR LA CANCELACIÓN DE HIPOTECAS QUE GRAVAN LA FINCA 25,230 DE CAGUAS A FAVOR DEL DEMANDANTE AL AMPARO DE LA SECCIÓN 2-604 (A) DE LA LEY DE TRANSACCIONES COMERCIALES, 19 LPRA SEC. 754, AUN CUANDO LIBRE Y VOLUNTARIAMENTE CANCELÓ LA OBLIGACIÓN AL PRESENTAR EN EL REGISTRO DE LA PROPIEDAD LA ESCRITURA VENTA JUDICIAL, CANCELACIÓN DE HIPOTECA Y ORDEN DE CANCELACIÓN DE GRAVÁMENES POSTERIORES, LUEGO DE HABERSE ANULADO LA VENTA JUDICIAL DEL 2008.

El recurrido compareció con su *"Alegato en Oposición a Petición de Certiorari"* el 11 de marzo de 2024. El 14 de marzo del mismo año se le ordenó al TPI-Caguas que elevara los autos originales ante este foro. Recibido los autos el 4 de abril de 2024, y con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

---

[20] Apéndice del recurso, pág. 63.
[21] *Id.* pág. 62.
[22] *Id.* pág. 68.
[23] *Id.* pág. 71.

**II.**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 2023 TSPR 65, 212 DPR ___ (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004, (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174-175 (2020).

A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios a considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Rivera et al. v. Arcos Dorados et al.,* supra; *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 96-97 (2008). La precitada Regla dispone lo siguiente:

El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A)  Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B)  Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C)  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D)  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E)  Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F)  Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G)  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluara tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000); *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992); citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

**III.**

Luego de evaluar detenidamente el expediente que nos ocupa, justipreciamos que el foro primario no abusó de su discreción en la evaluación de la prueba ante sí. No hallamos sugerencia alguna en los documentos evaluados que indique error de derecho o abuso discrecional por parte del Foro recurrido.

Entendemos que no existe razón en derecho que nos permita obviar la norma de abstención judicial que, en procedimientos como el de autos, regula nuestras funciones. Al evaluar los documentos que nos ocupan, coincidimos con que, al adjudicar el asunto, el Foro

Primario actuó de conformidad con las normas que prevalecen en la materia que atendemos.

Además, en virtud de que la parte peticionaria no demostró que el presente recurso se encuentra entre las instancias contempladas en la Regla 40 del Reglamento del Tribunal de Apelaciones, la cual nos permite entender sobre el mismo, nos abstenemos de intervenir en el caso de epígrafe.

**IV.**

Por los fundamentos que anteceden, *denegamos expedir el recurso de autos.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones