Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| BANCO POPULAR DE PUERTO RICO<br><br>Recurrido<br><br>Vs.<br><br>R.V.M. DESIGN GROUP, P.S.C., RENÉ VÉLEZ MARICHAL Y OLGA ROSADO RODRÍGUEZ<br><br>Peticionarios | KLCE202500612 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Sobre:  Cobro de Dinero y Ejecución de Hipoteca<br><br>Caso Núm.: BY2021CV00681 |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Rodríguez Casillas, juez ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 28 de agosto de 2025.

Comparecen ante nos, el Sr. Rene Vélez Marichal ("Vélez Marichal") y la Sra. Olga Rosado Rodríguez ("Rosado Rodríguez") (en conjunto "Peticionarios") para que revisemos la *Orden* emitida el 5 de mayo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón ("TPI"). En esta, se declaró *No Ha Lugar* la solicitud de reconsideración presentada por los Peticionarios.

Evaluada la totalidad del expediente, **denegamos** el auto de *certiorari* solicitado.

**-I-**

El **22 de febrero de 2021**, Banco Popular de Puerto Rico ("BPPR o recurrido") presentó una *Demanda* sobre Cobro de Dinero y Ejecución de Hipoteca contra RVM Design Group PSC ("RVM"), el señor Vélez Marichal y la señora Rosado Rodríguez.[1] En resumen,

---

[1] Apéndice 2 del Recurso de *certiorari,* págs. 2 – 20.

Número Identificador
RES2025_____

alegó que el 5 de junio de 2008, RVM suscribió un Pagaré Hipotecario de *FlexiLínea* con el núm. *101-2673487-8801* ("Pagaré"), mediante el cual se le concedió un crédito con préstamos y adelantos por la suma de $100,000.[2] El Pagaré establecía que, en caso de incumplimiento, las sumas adeudadas advendrían líquidas y exigibles. Por lo tanto, con el propósito de garantizar el pago de la obligación, los Peticionarios constituyeron una hipoteca sobre el inmueble localizado en la Urbanización Riberas del Río del Barrio Juan Sánchez en el municipio de Bayamón.[3] No obstante, los Peticionarios incumplieron con las obligaciones contractuales, por lo que el BPPR solicitó que se declarara con lugar la demanda y los condenara al pago de la suma reclamada.

El **24 de mayo de 2021**, el señor Vélez Marichal y Design Group P.S.C., contestaron la demanda, aceptaron ciertos atrasos, pero no reconocieron las sumas alegadas.[4] Por su parte, la señora Olga Rosado Rodríguez contestó la demanda el **25 de junio de 2021**.[5]

Luego de varios trámites procesales, el **17 de agosto de 2021** el BPPR sometió una *Moción de Sentencia Sumaria*, en la cual alegó la inexistencia de controversia sustancial de hechos materiales, por lo que procedía el dictamen sumario a su favor.[6] Acompañó una *Declaración Jurada* de la Sra. Frances Fuentes Rodríguez, quien ocupaba la posición de Oficial de Relaciones Comerciales de la División de Préstamos Especiales del BPPR.[7] Solicitó que se declarara con lugar su demanda incluyendo el pago de la suma principal de $100,000.00, los intereses, más las costas, gastos y honorarios de abogado. Además, requirió que se ordenara la venta y

---

[2] *Íd.*, a las págs. 7 – 8.
[3] *Íd.*, a las págs. 9 – 20.
[4] Apéndice 3 del Recurso de *certiorari*, págs. 21 – 22.
[5] Apéndice 4 del Recurso de *certiorari*, págs. 23 – 41.
[6] Apéndice 5 del Recurso de *certiorari*, págs. 42 – 54.
[7] *Íd.*, a las págs. 51 – 54.

ejecución de cualesquiera otros bienes de los Peticionarios hasta saldar cualquier deficiencia que no sea cubierta con el producto de la venta y la ejecución del inmueble hipotecado.

Con la oposición a sentencia sumaria presentada por RVM y el señor Vélez Marichal; además, de la réplica de BPPR, el **21 de junio de 2022** el TPI dictó una *Sentencia* sumaria.[8] En esta hizo las siguientes determinaciones hechos incontrovertidos:

1. El 5 de junio de 2008, la demandada, RVM solicitó y suscribió un Pagaré de FlexiLínea, mediante el cual se le concedieron facilidades de crédito con préstamos y adelantos por la suma total máxima de $100,000.00 (Préstamo Núm. 101-2673487-8801).

2. Los demandados dejaron de realizar los pagos mensuales pactados, incurriendo así en una causa de incumplimiento. En virtud de los desembolsos realizados bajo la antes mencionada facilidad de crédito, los demandados adeudan al Banco Popular la suma de $100,000.00 por concepto de principal, más $60,480.36 de intereses acumulados al 9 de agosto de 2021, los cuales continúan acumulándose a razón de $12.32 diario (per diem) hasta su total pago y solvento (la "Deuda").

3. Para garantizar y asegurar el pago y cumplimiento de todas y cualesquiera deudas y obligaciones de RVM con el Banco Popular, el Sr. Vélez-Marichal y la Sra. Rosado-Rodríguez suscribieron un Documento de Prenda el 5 de junio de 2008.

4. Mediante el referido documento, el Sr. Vélez-Marichal y la Sra. Rosado-Rodríguez entregaron la siguiente garantía en carácter prendario:
   a. Pagaré hipotecario a favor de Banco Popular, o a su orden, por la suma principal de $100,000.00, con vencimiento a la presentación, suscrito el 5 de junio de 2008 ante el Notario Público Jorge Vélez Nieves bajo el affidávit número 9781.

5. El Pagaré Hipotecario, está garantizado por hipoteca constituida mediante la Escritura Número 76, otorgada el 5 de junio de 2008 ante el Notario Público Jorge Vélez Nieves, sobre el inmueble que se describe a continuación:
   URBANA: Solar #3 del Bloque "B" de la Urbanización Riberas del Río, localizada en el Barrio Juan Sánchez, del término municipal de Bayamón, Puerto Rico, con un área de 165.00 metros cuadrados, en lindes por el NORTE, con el solar #18, en una distancia de 10.00 metros; por el SUR, con la calle #2(Oeste), en una distancia de 10.00 metros; por el ESTE, con el solar #2, en una distancia de 16.50 metros y por el OESTE, con el solar 4, en una distancia de 16.50 metros.

---

[8] Notificada el **23 de junio de 2022**. Apéndice 6 del Recurso de *certiorari*, págs. 55 – 68.

> Enclava una estructura construida conforme a los planos y especificaciones aprobados por las agencias e instrumentalidades pertinentes para fines residenciales, diseñada para vivienda de una familia.
>
> ORIGEN: Se segrega de la finca #65425, inscrita al folio 9 del tomo 1479 de Bayamón Sur.
>
> FINCA: #65425, inscrita al folio 91 del tomo 1479 de Bayamón Sur, inscripción 1ra. (Sección I de Bayamón).
>
> 6. El Banco Popular tiene interés sobre el pagaré hipotecario descrito anteriormente y ostenta la posesión legítima y tenencia de buena fe de dicha prenda.
>
> 7. Los demandados Vélez-Marichal y Rosado-Rodríguez garantizaron de forma solidaria el pago y cumplimiento de todos y cualesquiera préstamos, facilidades de crédito y financiamiento concedidas en el pasado o que se concedan en el futuro por Banco Popular a RVM.
>
> 8. El incumplimiento con los términos y condiciones de la facilidad de crédito antes descrita le concedió a Banco Popular la facultad de acelerar el vencimiento de las sumas adeudadas, solicitar el saldo total de las obligaciones y a ejecutar las garantías y las prendas.
>
> 9. Las cantidades adeudadas en la facilidad de crédito están vencidas, son líquidas, exigibles, y no han sido satisfechas a pesar de los innumerables requerimientos de pago realizados por Banco Popular.[9]

En consecuencia, concluyó que la prueba demostró que la deuda no había sido satisfecha por los deudores y esta estaba vencida, líquida y exigible, por lo que declaró *con lugar* la demanda. Por lo tanto, condenó a RVM y a los Peticionarios al pago solidario de las suma reclamada por BPPR; y de no efectuarse el pago en el término de 30 días, procedía la venta en pública subasta del inmueble hipotecado. Por lo que, de quedar cualquier deficiencia, los Peticionarios serían responsables.

El **15 de agosto de 2022**, el BPPR presentó una *Moción de Ejecución de Sentencia*.[10] Dicha solicitud fue acogida por el TPI y emitió, tanto la orden como el mandamiento de ejecución de sentencia.[11]

---

[9] *Íd.*, a las págs. 57 – 58.
[10] Apéndice 7 del Recurso de *certiorari*, págs. 69 – 76.
[11] Apéndice 8 del Recurso de *certiorari*, págs. 77 – 82.

El **3 de noviembre de 2022**, BPPR presentó una moción sometiendo los documentos de venta en pública subasta con sus anejos.[12]

Celebrada la tercera subasta el **21 de noviembre de 2022**,[13] el inmueble fue adjudicado al BPPR por la suma de $50,000.00.[14]

El **1 de diciembre de 2022**, el BPPR solicitó la confirmación de la venta y adjudicación.[15] **Al siguiente día**, el TPI emitió la *Orden de Confirmación de Adjudicación o Venta Judicial* sobre la propiedad.[16]

Así las cosas, el **11 de septiembre de 2024** el BPPR presentó la *Solicitud de Embargo de Bienes Muebles en Ejecución de Sentencia.*[17] En resumen, alegó que, luego de abonar la suma de $50,000.00, subsistía una deficiencia de $42,264.70 por concepto del principal, más $75,833.02 en intereses acumulados al 29 de agosto de 2024, los cuales seguían acumulándose; además, de las costas, los gastos y los honorarios de abogados, según pactado. Señaló que los Peticionarios no habían satisfecho la deficiencia, por lo que solicitó al TPI una orden de embargo sobre bienes muebles de dicha parte.

El **12 de septiembre de 2024**,[18] el TPI expidió una *ORDEN DE EMBARGO EN EJECUCIÓN DE SENTENCIA* y un *MANDAMIENTO DE EMBARGO EN EJECUCIÓN DE SENTENCIA* en contra los Peticionarios.[19]

Por su parte, el **22 de abril de 2025** los Peticionarios presentaron una *Moción Urgente en Solicitud de Paralización de*

---

[12] Apéndice 9 del Recurso de *certiorari*, págs. 83 – 100.
[13] Del expediente surge que la Primera y Segunda Subasta fueron celebradas los días 7 y 14 de noviembre de 2022, respectivamente. Ambas fueron declaradas desiertas. Véase; Apéndice 10 del Recurso de *certiorari*, págs. 101 – 104.
[14] Apéndice 10 del Recurso de *certiorari*, págs. 105 – 106.
[15] Apéndice 11 del Recurso de *certiorari*, págs. 107 – 114.
[16] Apéndice 12 del Recurso de *certiorari*, págs. 115 – 116.
[17] Apéndice 14 del Recurso de *certiorari*, págs. 121 – 131.
[18] Notificada el 16 de septiembre de 2024.
[19] Apéndice 15 del Recurso de *certiorari*, págs. 132 – 137.

*Embargos*.[20] Arguyeron que la deuda había sido satisfecha en su totalidad dado a la reventa de la propiedad por la suma de $191,000.00,[21] por lo que de concederse las solicitudes de embargo posteriores, constituiría un enriquecimiento injusto.

Mediante Orden emitida el **23 de abril de 2025**,[22] el TPI declaró *No Ha Lugar* dicha solicitud.[23]

Inconformes, el **2 de mayo de 2025** los Peticionarios solicitaron la reconsideración del dictamen.[24] Fundamentaron su solicitud en la doctrina del enriquecimiento injusto, reconocida en el caso *SLG Sánchez v. SLG Valentín,* 186 DPR 503 (2012). Además, reiteraron que el BPPR se adjudicó la propiedad por $50,000.00, y luego, la vendió por $191,000.00, por lo que permitir la ejecución adicional de bienes, representaría un doble cobro.

Mediante *Orden* emitida el **5 de mayo de 2025**,[25] el TPI declaró *No Ha Lugar* la solicitud de reconsideración.[26]

El **4 de junio de 2025**, el señor Vélez Marichal y la señora Rosado Rodríguez presentaron ante nos el auto de *certiorari* y señalaron la comisión de dos (2) errores:

1. Erró el Tribunal de Primera Instancia al permitir la continuación de la ejecución de sentencia a pesar de que la deuda ya había sido satisfecha mediante la adjudicación y posterior venta del inmueble objeto de la demanda original.

2. Erró el Tribunal de Primera instancia al ignorar la doctrina jurisprudencial del enriquecimiento injusto, permitiendo un doble cobro tras la recuperación sustancial del crédito mediante la reventa del bien hipotecado, e incurriendo en abuso de discreción.

Por su parte, el **26 de junio de 2025** compareció el BPPR en el escrito intitulado: *"MOCIÓN EN OPOSICIÓN A LA EXPEDICIÓN DEL AUTO DE CERTIORRI"*.

---

[20] Apéndice 16 del Recurso de *certiorari*, págs. 138 – 141.
[21] Según los peticionarios, dicha transacción surge del Registro de la Propiedad, véase Folio Karibe en el Apéndice 13 del Recurso de *certiorari*, págs. 117 – 120.
[22] Notificada el 24 de abril de 2025.
[23] Apéndice 17 del Recurso de *certiorari*, pág. 142.
[24] Apéndice 19 del Recurso de *certiorari*, págs. 151 – 153.
[25] Notificada el mismo día.
[26] Apéndice 1 del Recurso de *certiorari*, pág. 1.

Con el beneficio de la comparecencia de ambas partes, dimos por perfeccionado el caso para la atención del Panel Especial.

**-II-**

Sabido es que el auto de *certiorari* es un medio procesal de carácter discrecional, que a su vez, permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[27] Así, se entiende por discreción como el poder para decidir en una forma u otra; esto es, para escoger entre uno o varios cursos de acción.[28]

Por ello, la Regla 52.1 de Procedimiento Civil, delimita las instancias en que habremos de atender —*vía certiorari*— las resoluciones y órdenes emitidas por los tribunales de instancia; máxime, en determinaciones post sentencias como la controversia que nos ocupa:

> [E]l recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, **solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo.** No obstante, y por <u>excepción</u> a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. <u>Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión</u>. [...].[29]

Bajo el carácter de discrecionalidad, la Regla 40 del Reglamento de este Tribunal de Apelaciones establece los siguientes criterios para mostrar causa o para la expedición del auto de *certiorari:*

**(A)** Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

**(B)** Si la situación de hechos planteada es la más indicada para el análisis del problema.

---

[27] *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 711 (2019); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337 – 338 (2012).

[28] *García v. Asociación,* 165 DPR 311, 321 (2005).

[29] Regla 52.1 de las Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V., R. 52.1. *Énfasis nuestro.*

**(C)** Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

**(D)** Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

**(E)** Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

**(F)** Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

**(G)** Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[30]

En consecuencia, el Tribunal Supremo de Puerto Rico ha dispuesto que:

> [D]e ordinario, no se intervendrá con el ejercicio de discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.[31]

De manera, que si la actuación del foro recurrido no está desprovista de base razonable —ni perjudica los derechos sustanciales de las partes— deberá prevalecer el criterio del juez de instancia a quien le corresponde la dirección del proceso.[32]

**-III-**

En esencia, los Peticionarios nos plantean que el TPI erró al permitir que la ejecución de la sentencia continuara, pese a que según estos, la deuda ya había sido satisfecha mediante la venta del inmueble. Con ello, ignoró la doctrina de enriquecimiento injusto y permitió el doble cobro tras el BPPR haber recuperado el crédito mediante la venta del bien hipotecado.

El presente caso se encuentra en la etapa post-sentencia, dado a que la *Sentencia* emitida ya advino final y firme. Los Peticionarios buscan paralizar la orden de embargo que emitió el TPI contra los bienes muebles de estos. Sin embargo, al examinar la totalidad del expediente, no encontramos fundamento para expedir

---

[30] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62 – 63, 215 DPR __ (2025).
[31] *Zorniak Air Services v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992).; *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[32] *SLG Zapata- Rivera v. JF Montalvo*, 189 DPR 414, 434 – 435 (2013).

el auto de *certiorari*, ya que la determinación recurrida constituye una decisión correcta, conforme las normas de derecho y los hechos ante su consideración.

Es decir, no surge prueba en el expediente tendente a demostrar que el TPI abusó de su discreción o actuó con perjuicio, parcialidad o error manifiesto.

Por lo tanto, en el ejercicio de la discreción que nos permite la Regla 40 del Tribunal Apelaciones, *supra,* resolvemos no intervenir con la determinación recurrida.

**-IV-**

Por los fundamentos antes expuestos, **denegamos** la expedición del auto de *certiorari* solicitado.

Lo acordó el Tribunal y certifica la secretaria del Tribunal de Apelaciones.  El Juez Marrero Guerrero concurre con el resultado.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones